**Jonathan BARNES, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 03–04–00059–CR.

Court of Appeals of Texas, Austin.

April 7, 2005.

Rehearing Overruled May 12, 2005.

Alexander L. Calhoun, Austin, for Appellant.

Melinda E. O'Neil, Asst. Crim. Dist. Atty., Lockhart, for Appellee.

Before Chief Justice LAW, Justices B.A. SMITH and PURYEAR.

## OPINION

W. KENNETH LAW, Chief Justice.

A jury found appellant Jonathan Barnes guilty of three counts of aggravated sexual assault of a child, for each of which it assessed punishment at ninety-nine years' imprisonment and a $10,000 fine. *See* Tex. Pen.Code Ann. § 22.021 (West Supp.2004–05). Appellant brings forward nine points of error complaining of the admission of hearsay, unqualified expert testimony, and extraneous misconduct evidence; a violation of the witness exclusion rule; the denial of his right of confrontation; improper jury argument; and double jeopardy. Finding appellant's double jeopardy

claim to be well-taken, we will reform the judgment of conviction to set aside the conviction on one of the three counts. We will overrule appellant's remaining points of error and affirm the judgment of conviction as reformed.

### Background

In July 2002, appellant was living in Lockhart with his two daughters, his girlfriend Jamie Corley, and Corley's son. On July 8, Corley and the children went to visit a friend in Manchaca. Corley testified that during a private moment that night, appellant's ten-year-old daughter, C.B., asked Corley "if she could tell me something." C.B. then told Corley that "her dad was doing stuff to her, and I asked her what. And she said it was—his penis and balls were put in her mouth." C.B. added that she "was touched down in her personal area and on her mouth." Corley testified that C.B. had pointed to her vaginal area when she said "down there" and had said that "it bled and it hurt." C.B. told Corley that this had happened more than once, soon after her mother died in 1997.[1]

After returning to Lockhart on the morning of July 9, Corley told appellant what C.B. had said. They argued, and appellant ordered Corley and her son out of the house. Corley went to a neighbor's house and called the police.

Lockhart police officer Tara Tippie was one of the officers who responded to the call. Tippie testified that appellant remained calm when told why the officers were there. He admitted Tippie into the house, introduced her to his daughters, and remained outside while Tippie spoke to the girls. Tippie testified that C.B. told

---

1. Appellant's wife, the mother of his two daughters, was fatally struck by an automobile in 1997.

her that "her dad had made her have sex with him." More specifically, Tippie testified that C.B. said that "her father had put his penis in her mouth" and "also she pointed down to her vagina area."

Tippie's patrol car was equipped with video recording equipment and the officer was wearing a microphone. Her conversation with C.B. was recorded, and the recording was introduced in evidence by the defense and played for the jury. The court reporter's record reflects that C.B. told Tippie, "Daddy forced me to have sex with him." Asked when, C.B. answered, "When I was—back before. I was four or five or six." Asked how often this had happened, C.B. replied, "It was three or four times." Asked what he had made her do, C.B. said, "He put his—he put his penis in my mouth and here."

Dr. Beth Nauert, a pediatrician, examined C.B. at the Children's Advocacy Center two weeks after her outcry. Nauert testified that during a preliminary interview, C.B. told her that when she was "4 or 5 or 6," her father "took [her] clothes off" and touched her with "his hands and his nuts." Nauert said that C.B. described being touched "both in her mouth and her vaginal area." Asked by the prosecutor "whether or not there had been actual penetration of the vaginal area," Nauert replied, "She said 'inside.' I didn't spend any time trying to determine, you know, how far inside that was." Later, during cross-examination, Nauert testified that she was unsure whether C.B. had said that she was touched "in" or "inside" her vaginal area. Nauert also said that she and C.B. did not discuss how often this had happened.

Nauert testified that C.B.'s physical examination was normal. Specifically, "her vaginal area had a normal-sized opening. There were not any tears or scars in her rectal examination, and mouth examination was also normal." C.B.'s hymen was intact and there was no physical indication of sexual abuse. Nauert testified that the physical examination did not rule out the possibility of sexual abuse, but did not confirm it.

C.B., who was eleven at the time of trial, testified by closed-circuit television. She was a reluctant witness. She acknowledged having received "bad touches," but refused to elaborate. At the State's request, the court allowed C.B. to answer questions by writing on a legal pad. In this manner, C.B. testified that she was mad at appellant because "he raped me." She also testified that she had seen a penis only once, during a fifth-grade class.

In his own testimony, appellant denied committing the alleged offenses. He and other defense witnesses testified that Corley was mentally unstable and not credible. Appellant believed that Corley had caused C.B. to make the false accusations against him.

### Hearsay

#### Statements to Tippie

■ Appellant contends the trial court erred by admitting Officer Tippie's testimony describing C.B.'s statements to her on the morning of July 9. The court overruled appellant's hearsay objection after the State invoked the excited utterance exception. Tex.R. Evid. 803(2). We review evidence rulings for an abuse of discretion. *See Montgomery v. State*, 810 S.W.2d 372, 390 (Tex.Crim.App.1991) (op. on reh'g).

■ Rule 803(2) permits the admission of an out-of-court statement "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The exception is founded on the belief that a statement made as a result of

a startling event or condition is involuntary and does not allow the declarant an opportunity to reflect or fabricate, thereby ensuring its trustworthiness. *Zuliani v. State,* 97 S.W.3d 589, 595 (Tex.Crim.App. 2003); *Gutierrez v. State,* 85 S.W.3d 446, 455 (Tex.App.-Austin 2002, pet. ref'd). It is not dispositive that the statement was made in answer to a question or that it was separated by a period of time from the startling event, but these are factors to be considered in applying the rule. *Salazar v. State,* 38 S.W.3d 141, 154 (Tex.Crim. App.2001). The critical determination is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event or condition at the time of the statement. *Id.*

Tippie testified that C.B. was crying and "just very withdrawn from me, very upset." There is no evidence, however, that C.B.'s emotional state was due to the stress of excitement caused by some startling event or condition. Appellant's conduct was doubtlessly shocking or startling when it occurred, but there is nothing in the record to indicate that, five years later, C.B. was still dominated by the emotions it produced. It has been held that the startling event that triggers an excited utterance need not be the crime itself. *Hunt v. State,* 904 S.W.2d 813, 816 (Tex.App.-Fort Worth 1995, pet. ref'd). Assuming this is correct, there is no evidence of any other startling event or condition that triggered C.B.'s statements to Tippie. The circumstances shown by this record do not reflect that C.B.'s statements to the officer "resulted from impulse rather than reason and reflection." *Zuliani,* 97 S.W.3d at 596 (quoting *Fowler v. State,* 379 S.W.2d 345, 347 (Tex.Crim.App.1964)); *and see Harvey v. State,* 123 S.W.3d 623, 631 (Tex.App.-Texarkana 2003, pet. ref'd) (outcry six years after assault not shown to be excited utterance). Finding no other grounds for admission, we agree with appellant that

the trial court abused its discretion by admitting Tippie's hearsay testimony.

■ Although Tippie's hearsay testimony was erroneously admitted, reversible error is not presented. The erroneous admission of evidence will not result in reversal when the same evidence was elsewhere received without objection. *Leday v. State,* 983 S.W.2d 713, 718 (Tex.Crim. App.1998); *Hudson v. State,* 675 S.W.2d 507, 511 (Tex.Crim.App.1984); *Perez v. State,* 113 S.W.3d 819, 831 (Tex.App.-Austin 2003, pet. ref'd). During his cross-examination of Tippie, appellant offered in evidence the recording of the officer's conversation with C.B. in which C.B. made the objected-to statements. By introducing C.B.'s statements to Tippie in this manner, appellant waived or forfeited his objection to their earlier admission, or alternatively rendered the earlier error harmless. *Leday,* 983 S.W.2d at 718. Point of error three is overruled.

### Outcry to Corley

■ Appellant contends the trial court erred by admitting Corley's outcry testimony without holding a hearing to determine its reliability. *See* Tex.Code Crim. Proc. Ann. art. 38.072 (West Supp.2004–05). Article 38.072 creates an exception to the hearsay rule for the outcry statements of children who are victims of certain sexual and assaultive offenses. As a predicate for the admission of such testimony, the statute requires the trial court to conduct a hearing outside the jury's presence to determine the outcry statement's reliability based on the time, content, and circumstances of the statement. *Id.* art. 38.072, § 2(b)(2).

Although appellant did not request a hearing or object to its absence, he did timely object to Corley's testimony as hearsay. This placed the burden on the

State, as the proponent of the outcry testimony, to show that the evidence was admissible under article 38.072 or some other exception to the hearsay rule. *Long v. State*, 800 S.W.2d 545, 548 (Tex.Crim.App. 1990). The State concedes that the only basis for admitting Corley's testimony was article 38.072. Because the trial court immediately overruled appellant's objection instead of conducting a hearing, the State was not required to prove that the testimony was reliable. *See id.* The court's failure to conduct the section 2(b)(2) hearing was error, as was the admission of Corley's outcry testimony without a showing of reliability.

■ Once again, however, reversible error is not presented. C.B.'s outcry to Corley was substantially identical to the statements she made a few hours later to Tippie. The introduction in evidence of the recording of C.B.'s statements to the officer forfeited, waived, or rendered harmless the error in admitting Corley's outcry testimony. *Leday*, 983 S.W.2d at 718. Point of error one is overruled.

### Statements to Nauert

■ Appellant also contends that the trial court erred by admitting Dr. Nauert's account of C.B.'s statements to her at the Children's Advocacy Center. The court overruled appellant's hearsay objection without requiring the State to identify a basis for admission, but the State now argues that C.B.'s statements to Nauert were made for the purpose of medical diagnosis or treatment. Tex.R. Evid. 803(4). Anticipating this argument, appellant urges that the statements were elicited for the purpose of litigation, not medical diagnosis or treatment. Appellant further argues that C.B. was not shown to have appreciated the importance of being truthful in her statements to the doctor.

■ Rule 803(4) excepts from the general hearsay rule statements "made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." *Id.* For a statement to be admissible under this exception, the declarant must make the statement for the purpose of receiving medical treatment and the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis. *Jones v. State*, 92 S.W.3d 619, 623 (Tex.App.-Austin 2002, no pet.).

This Court has recognized that a child's statements to a physician or other health care professional describing sexually abusive acts and identifying the abuser can be admissible under rule 803(4). *Id.; Fleming v. State*, 819 S.W.2d 237, 247 (Tex.App.-Austin 1991, pet. ref'd). But these opinions do not broaden the medical diagnosis or treatment exception to encompass every statement made by a child victim of sexual abuse, or support the blanket conclusion that every statement made by a child to a physician regarding a sexual offense was made for the purpose of treatment or diagnosis. *See Jones*, 92 S.W.3d at 623. We have also pointed out that a child may not understand the need to be truthful with a physician, and therefore the assumption underlying the medical diagnosis and treatment exception may not apply when the declarant is a child. *Fleming*, 819 S.W.2d at 247.

C.B. was referred to Nauert by Child Protective Services. C.B. was brought to the center by her maternal grandmother, but Nauert was alone with the child during the examination. The examination consisted of three parts: interview, physical examination, and laboratory testing. Nauert

stated that it is important that a patient be truthful with her doctor in the interview, but she was not asked if she believed that C.B. understood this. After the interview, Nauert conducted the physical examination, which included an examination of C.B.'s genitals with a culdoscope. The doctor also took vaginal, rectal, and throat cultures to test for sexually transmitted diseases. These tests were negative.

Appellant argues that because the alleged abuse had taken place five years earlier and the children had already been removed from appellant's custody, there was no medical justification for Nauert's examination. *See Fleming,* 819 S.W.2d at 247. But while Nauert knew that C.B. had made an outcry regarding sexual abuse, it is not clear from the record how much Nauert knew of the allegations. Moreover, even if Nauert knew that C.B.'s outcry described abuse five years in the past, it was appropriate for the doctor to examine C.B. to determine if the abuse was continuing or if the child suffered from a sexually transmitted disease as a result of the prior abuse. Thus, while Nauert was clearly gathering evidence for a possible prosecution, she was also conducting a legitimate medical examination. *See Hughbank v. State,* 967 S.W.2d 940, 943 (Tex. App.-Fort Worth 1998, no pet.). Nor was it necessary for Nauert to specifically inquire whether C.B. appreciated the need to be truthful. C.B. was ten years old, and Nauert testified that C.B. was sufficiently mature to be interviewed outside her grandmother's presence. The evidence supports a finding that C.B. understood the need to be truthful. *See Beheler v. State,* 3 S.W.3d 182, 189 (Tex.App.-Fort Worth 1999, pet. ref'd). We conclude that it was not an abuse of discretion to admit Nauert's hearsay testimony under rule 803(4). Point of error five is overruled.

### Expert Opinion

■ Appellant contends the trial court erred by allowing Dr. Nauert to express an opinion on a matter outside her area of expertise. *See* Tex.R. Evid. 702. After establishing that the doctor had examined children who had been abused by family members and children who had been abused by strangers, the State asked if she had "notice[d] a difference between a delayed outcry between those who have been abused by a family member and those who have been abused by a stranger." Over appellant's objection that Nauert was not qualified to answer this question, she replied, "Not necessarily. The delay in outcry does have to do with often whether or not the person is still in contact with the perpetrator, and sometimes whatever situation comes up that makes them feel comfortable to finally tell somebody about it."

■ Before this question was asked and answered, Nauert testified that over a period of twenty years she had examined hundreds of children who were suspected of being physically or sexually abused. She also testified that in her experience, it was not unusual for children to delay their outcry. The question to which appellant objected did not ask Nauert to express an opinion on the psychological or social reasons for a child to delay her outcry, but instead asked Nauert to state what she had observed during the course of her career. Even if the question is construed as calling for an opinion, the trial court did not abuse its discretion by concluding that Nauert was qualified by her experience to answer it. *See id.* Point of error six is overruled.

### Extraneous Misconduct

■ In point of error four, appellant complains of the admission of what he contends was improper character conformity evidence. *See* Tex.R. Evid. 404(b).

During her direct examination, Jamie Corley was asked by the prosecutor if, and how often, she had sex with appellant while living with him. She said that they had sex almost every night. The prosecutor then asked, "Was that your choice?" Corley replied, "He—he would get angry a lot of times if—he would get upset if we didn't—." At this point, appellant voiced a relevance objection. The objection was overruled and Corley continued, "He would get upset. I mean, it was just better to go ahead and clear the air than to argue." The testimony then turned to other matters.

Appellant asserts that evidence he pressured Corley to have sex with him on a nightly basis was irrelevant to any issue in this case and served only to suggest that he was likely to have sexually assaulted his daughter because of his sexually aggressive character. Appellant did not, however, promptly object to this line of questioning. See Tex.R.App. P. 33.1; Tex.R. Evid. 103. Moreover, in his own testimony, appellant said that he and Corley had a "nonstop" sexual relationship, although he characterized her as being the more aggressive partner. Given the brevity of the complained-of testimony, appellant's own testimony, and the lack of any emphasis on this subject during argument, we conclude that the admission of the challenged testimony, if error, did not harm a substantial right. See Tex.R.App. P. 44.2(b). Point of error four is overruled.

### Confrontation

▓▓▓ Appellant contends that by allowing C.B. to testify by means of a closed-circuit television system, the trial court denied him his Sixth Amendment right to confront the witnesses against him. U.S. Const. amend. VI. The use of closed-circuit television to take the testimony of a child victim is authorized by statute under certain circumstances. Tex.Code Crim. Proc. Ann. art. 38.071, §§ 1, 3 (West Supp. 2004–05). Because this procedure denies face-to-face confrontation, a trial court is constitutionally required to first hear evidence and make a case-specific determination that: (1) the use of the closed-circuit television system is necessary to protect the welfare of the particular child witness; (2) the child witness would be traumatized by the presence of the defendant; and (3) the emotional distress suffered by the child witness in the presence of the defendant is more than mere nervousness or excitement or some reluctance to testify. *Maryland v. Craig*, 497 U.S. 836, 855–56, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990); *Hightower v. State*, 822 S.W.2d 48, 51 (Tex.Crim.App.1991).

The trial court conducted a hearing on the necessity for using closed-circuit television, but did not make express findings of fact and conclusions of law. By permitting the use of the closed-circuit television system, however, the court implicitly made the constitutionally required findings.[2] Appellant urges that the evidence adduced at the hearing is not sufficient to support these findings. We will review the court's ruling for an abuse of discretion. *Hightower*, 822 S.W.2d at 53.

The only testimony adduced at the hearing was that of Christina Mason, a licensed professional counselor employed by a foster-care agency. Mason began counseling C.B. on a weekly basis in October 2002, one year before trial, when the child was temporarily placed in a foster home. Although C.B. had since gone to live with her

---

**2.** Appellant did not object to the absence of the findings or request that they be made, although he now complains of their absence.

grandmother, the weekly counseling sessions had continued. Responding to questions by the prosecutor, Mason testified:

Q Have you spoken with [C.B.] regarding testifying in court?

A Yes, I have.

Q Okay. What has her emotional reaction been when you discussed that with her?

A She gets very anxious. She says that she doesn't want to have to testify in front of her father. She has become tearful on a couple of occasions when we've talked about it.

Q To what extent—well, let me say this: Do you believe that going through this trial process is—has important therapeutic value for [C.B.]?

A Yes, I do, because I think she's going to get some closure on this whole situation and to really validate that this is not her fault.

Q Okay. With that said, what impact, if any, do you think it would have on [C.B.] to be called in to testify here in open court with her father in the room?

A She's going to probably become very upset and anxious. In a sense, it might even be retraumatizing for her to have to deal with her father while—to have to see her father again.

Q Okay. Has she been advancing in her treatment as you've given it to her?

A Yes, she has. And the kids actually made a lot of advancement as soon as their visits with their father had stopped, and they were no longer seeing him regularly.

Q Okay. What effect on that advancement do you think testifying in front of her father would have?

A I think we would see a regression. We would probably see an increase in her anxiety and depressed mood again.

During cross-examination, Mason testified that when she first began working with C.B., the child would "become very anxious" and "would start to shut down" when asked to discuss her father. Mason said that she had seen "that same sort of knee-jerk anxiety" and "shutting-down reaction" when speaking to C.B. about testifying at appellant's trial. Mason acknowledged that she did not "know for a fact" that testifying in front of her father would traumatize C.B., but she believed that it was "a strong possibility." Mason also mentioned that C.B. had recently experienced an episode of bed-wetting, which Mason attributed to her anxiety about testifying.

Appellant argues that Mason's testimony shows no more than that C.B. was reluctant to testify and would be nervous and uncomfortable in the courtroom. We disagree. Mason clearly testified to her belief that C.B. would be traumatized if she were required to appear in open court and testify in appellant's presence. We conclude that Mason's testimony supports findings that C.B. would be traumatized by appellant's presence and not just by the courtroom generally, that the emotional distress that C.B. would suffer in appellant's presence would be more than de minimis, and that the use of the closed-circuit television system was therefore necessary to protect C.B.'s welfare. On this record, the trial court did not abuse its discretion by overruling appellant's Sixth Amendment objection and permitting C.B. to testify by means of closed-circuit television. Point of error seven is overruled.

### Witness Rule

Appellant urges that the trial court erred by excusing Mason from the

witness exclusion rule. Tex.R. Evid. 614. The rule requires a trial court, at the request of a party, to exclude witnesses from the courtroom so that they cannot hear each other's testimony. During a break in C.B.'s testimony, the State asked the court to excuse Mason from the rule "for purposes of this witness's testimony."[3] The court granted the motion over appellant's objection and Mason later testified for the State.

The State asserts that appellant did not preserve error because he failed to object when Mason was called to testify. The State argues that when he objected to Mason's presence in the courtroom during C.B.'s testimony, "he only had an assumption that she would later be called as a witness." But since the State had taken the trouble to ask the court's permission to excuse Mason from the rule, the assumption was well-founded. Appellant's objection to Mason's presence during C.B.'s testimony was sufficient to preserve the error.

The State made no effort to demonstrate that Mason's presence in the courtroom was essential to the presentation of the State's case. Tex.R. Evid. 614(3). She was not otherwise exempt from the rule. Under the circumstances, the court abused its discretion by permitting Mason to remain in the courtroom during C.B.'s testimony. *See Moore v. State*, 882 S.W.2d 844, 848 (Tex.Crim.App.1994).

Appellant argues that the violation of the rule was harmful because Mason's testimony, during which she described C.B.'s reluctance to discuss the sexual abuse allegations during counseling sessions, "mirrored the complainant's behavior while testifying." Appellant urges that because Mason saw C.B. testify, she was able "to provide a psychological spin

during her own testimony." As we have already discussed, however, Mason first testified at the hearing on the State's request to use closed-circuit television. Mason's testimony at that hearing, which was before she heard C.B. testify, was substantially identical to her later trial testimony. On this record, we can state with fair assurance that hearing C.B. testify did not materially affect Mason's testimony, and thus did not affect appellant's substantial rights. Tex.R.App. P. 44.2(b); *see Ladd v. State*, 3 S.W.3d 547, 566 (Tex.Crim.App. 1999). Point of error two is overruled.

### *Jury Argument*

Appellant urges that the prosecutor improperly expressed his personal opinion regarding appellant's guilt during jury argument. Immediately before he concluded his final argument at the guilt-innocence stage, the prosecutor stated, "I don't know why he did this. I don't want to know. I know he did this. Find him guilty, come back, and we'll talk about what to do about it." At this point, appellant's counsel objected, "Objection, Your Honor, impermissible jury argument. The defense moves for a mistrial. That is ridiculous." The motion for mistrial was overruled.

Assuming that the prosecutor's remark was improper and that appellant's objection was sufficient to bring the impropriety to the court's attention, we conclude that an instruction to disregard would have been sufficient to cure the error. *See Dinkins v. State*, 894 S.W.2d 330, 357 (Tex. Crim.App.1995) (instruction to disregard will generally cure error in jury argument). The argument was not so extreme or manifestly improper as to render futile an instruction to disregard. *See Hernandez v. State*, 819 S.W.2d 806, 820 (Tex.

---

**3.** We infer from the State's request that the rule had been invoked.

Crim.App.1991). Because the error could have been cured by instruction, the court's failure to grant a mistrial was not error. *See Young v. State*, 137 S.W.3d 65, 70 (Tex.Crim.App.2004). Point of error eight is overruled.

### Double Jeopardy

The indictment in this cause contained nine counts. Counts one, four, and seven alleged that appellant intentionally or knowingly penetrated C.B.'s sexual organ with his penis on or about July 1, 1997, 1998, and 1999, respectively. *See* Tex. Pen.Code Ann. § 22.021(a)(1)(B)(I) (West Supp.2004–05). Counts two, five, and eight alleged that, on the same three dates, appellant intentionally or knowingly penetrated C.B.'s mouth with his sexual organ. *See id.* § 22.021(a)(1)(B)(ii). Counts three, six, and nine alleged that, on the same three dates, appellant intentionally or knowingly caused C.B.'s sexual organ to contact his sexual organ. *See id.* § 22.021(a)(1)(B)(iii).

Before testimony began, the State abandoned counts seven, eight, and nine. The remaining counts were submitted to the jury, which was instructed that the State was not required to prove the exact dates alleged in the indictment but could prove that the offenses occurred at any time prior to the presentment of the indictment and within the applicable limitations period. *See Sledge v. State*, 953 S.W.2d 253, 256 (Tex.Crim.App.1997). While deliberating appellant's guilt, the jury sent a note to the court saying there was a disagreement among them regarding Nauert's testimony as to "how many times that [C.B.] told her it happened." The court had the reporter read to the jury Nauert's testimony that she did not discuss this subject with C.B. The jury thereafter returned verdicts convicting appellant on counts one, two and three and acquitting him on counts four, five, and six.

■■■ The Double Jeopardy Clause protects against a second prosecution for the same offense following a conviction, a second prosecution for the same offense following an acquittal, and multiple punishments for the same offense. *Illinois v. Vitale*, 447 U.S. 410, 415, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); *Cervantes v. State*, 815 S.W.2d 569, 572 (Tex.Crim.App.1991). Appellant contends that his conviction on counts one and three violated the guarantee against multiple punishments for the same offense because there is no evidence of genital-to-genital contact as alleged in count three other than that incident to the vaginal penetration for which he was convicted under count one.

■■■ A person who commits more than one discrete sexual assault against the same complainant may be convicted and punished for each separate act, even if the acts were committed in close temporal proximity. *Vick v. State*, 991 S.W.2d 830, 833 (Tex.Crim.App.1999); *Vernon v. State*, 841 S.W.2d 407, 410 (Tex.Crim.App.1992). The statutes do not, however, authorize " 'stop-action' prosecutions." *Patterson v. State*, 152 S.W.3d 88, 92 (Tex.Crim.App. 2004). A conviction for a completed sexual assault bars conviction for conduct that is demonstrably part of the commission of that offense. *Id.* Thus, penile contact with mouth, genitals, or anus in the course of penile penetration is subsumed in a conviction for the penetration. *Id.*

In *Hutchins v. State*, 992 S.W.2d 629, 632 (Tex.App.-Austin 1999, pet. ref'd), the defendant was convicted of aggravated sexual assault of a child and indecency with a child by contact based on evidence showing only a single act of penetration. Because the only contact proved was that incident to the penetration, this Court set aside the indecency by contact conviction

on double jeopardy grounds. *Id.; see also Ochoa v. State,* 982 S.W.2d 904, 908 (Tex. Crim.App.1998). In *Patterson v. State,* 96 S.W.3d 427, 432 (Tex.App.-Austin 2002), *aff'd,* 152 S.W.3d 88 (Tex.Crim.App.2004), the defendant was convicted of aggravated sexual assault of a child by penetration, indecency with a child by contact, and indecency with a child by exposure based on evidence showing that the only contact or exposure was that incident to the penetration. This Court held that the indecency convictions were jeopardy-barred. *Id.* at 432–33.

Although *Hutchins* and *Patterson* involved convictions for greater inclusive and lesser included offenses, the same principle applies to convictions for aggravated sexual assault by penetration and by genital-to-genital contact. If both convictions are based on the same act, they constitute impermissible multiple convictions for the same offense. Genital-to-genital contact in the course of penile penetration is subsumed in the act of penetration. *Patterson,* 152 S.W.3d at 92.

◼ The court's charge in this cause authorized the jury to convict appellant of two separate acts of sexual assault by genital penetration, two separate acts of sexual assault by oral penetration, and two separate acts of sexual assault by genital-to-genital contact. The prosecutor explained the court's charge to the jury during his argument:

> [W]hen he puts it in her mouth and then he pulls away and then he puts it against and presses and doesn't quite make it in, and then a little later, comes back and forces his penis inside of her, that's three different acts. That's three different charges. That's three different guilty verdicts. And if he did it more than one time, that's four and five and six.

The jury's note to the trial court clearly shows that the jury was concerned with whether the State proved that each alleged act was in fact committed twice. On this record, the jury's decision to convict appellant of the acts alleged to have been committed on or about July 1, 1997, but acquit him of the acts alleged to have been committed on or about July 1, 1998, compels the conclusion that the jury found appellant guilty of committing each of the three alleged acts only once.

The State does not refer us to any evidence that appellant touched C.B.'s sexual organ with his sexual organ without penetration. C.B. told Corley that she "was touched in her vaginal area" and "it bled and hurt." This testimony suggests penetration. C.B. told Officer Tippie that appellant "forced me to have sex with him" and "put his penis in my mouth and here." Once again, the evidence suggests penetration. Doctor Nauert testified that C.B. described being touched "in her mouth and her vaginal area," and that she, Nauert, understood this to mean penetration. C.B.'s own testimony was that appellant "raped me," which in lay terms again suggests penetration. We do not find any evidence supporting the conclusion that appellant touched C.B.'s sexual organ with his sexual organ except as an incident to the penetration of C.B.'s sexual organ. Because the jury convicted appellant of only one act of genital penetration, it necessarily follows that the convictions on that count and on the genital-to-genital contact count were based on the same act. Appellant's conviction on count three therefore constituted an unauthorized second conviction for the same offense in violation of the Double Jeopardy Clause. *Patterson,* 152 S.W.3d at 92; *Patterson,* 96 S.W.3d at 432–33; *Hutchins,* 992 S.W.2d at 632.

We sustain point of error nine. When a defendant is convicted of two offenses in violation of the double jeopardy guarantee, the general rule is to set aside the conviction for the offense carrying the less serious punishment. *Landers v. State,* 957 S.W.2d 558, 560 (Tex.Crim.App. 1997). In the instant cause, the two offenses carry the same punishment. Therefore, we will set aside the conviction on count three.

There is a single judgment of conviction. The judgment is reformed to reflect convictions on counts one and two only and to delete all references to conviction and sentence on count three, and that count is dismissed. As reformed, the trial court's judgment is affirmed.