# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00084-CR

**Edwin Garcia, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. 9044148, HONORABLE JON N. WISSER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Edwin Garcia of injury to a child in connection with the death of his twenty-one-month-old child. Finding that he used a blunt object as a deadly weapon, the court assessed sentence at twenty-two years in prison. Garcia contends that the district court erred by admitting into evidence a transcript and a television news report of a custody hearing concerning child protective services (CPS) retaining custody of his younger child. Both excerpts show him at the hearing admitting that he intentionally injured the child. We affirm the judgment.

On December 13, 2001, emergency workers responded to a 911 call reporting that a child was having difficulty breathing. The child was Garcia's son and was in Garcia's care when emergency workers arrived. The child was taken to the hospital and died the next day. The child exhibited no external injuries, but doctors told the child's mother that the child had internal injuries consistent with shaken baby syndrome. While the parents were giving statements to police, CPS took

custody of the victim's younger sister. Garcia was arrested, and was appointed an attorney in this case on December 17, 2001.

Before Garcia met with his attorney in this case, a civil court on December 21, 2001, held a hearing about custody of the victim's younger sister. *See* Tex. Fam. Code Ann. § 262.201 (West Supp. 2006). Neither Garcia nor Yesenia Campuzzano, the children's mother, was represented by counsel at the custody hearing. The CPS caseworker, Shannon Davis, and the prosecutor both stated at the outset of the hearing that they believed that Garcia was responsible for the victim's death. The judge conducted the hearing based on that underlying presumption. When Garcia raised his hand to make a statement, the court cautioned him:

> Obviously, charges have been filed against you. You absolutely have the right to remain silent. You do not have to say anything. Anything you say may be used against you. There's a record made of every statement that you make.
>
> You have the right to an attorney, and I'm appointing an attorney to represent you. That attorney, obviously is not here yet. One will be appointed for you. You should talk to an attorney before you make any statement.

Garcia responded, "I wish to talk right now." Later, when he requested to speak again, the court reminded him of his rights. Garcia nevertheless made damaging statements, including an assertion that the victim fell accidentally, and a later declaration that he killed the child on purpose. The parties agree that a video recording of the latter statement was shown on a television news report.

Before the trial in this cause, Garcia moved to suppress the television news clip and the transcript of the custody hearing. The court overruled the motions and, over reurged objections

2

during trial, admitted the evidence with some of the text and some of the video redacted. The jury did not reach a verdict on capital murder, but found Garcia guilty of injury to a child.

Garcia contends that his statements made during the custody hearing were inadmissible because he never validly waived his right to remain silent or his right to counsel. He argues that the custody hearing was coercive and complains that those statements were made without the benefit of the advice and presence of counsel. He contends that the admission of the custody hearing transcript and the video news clip at the criminal trial violated his rights to counsel and to remain silent under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

We find no error in admitting the evidence because essentially the same evidence was admitted through other witnesses without objection. "[O]verruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling." *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *see also Barnes v. State*, 165 S.W.3d 75, 81 (Tex. App.—Austin 2005, no pet.). Campuzzano testified, without objection, regarding various stories she heard from Garcia about the events leading up to the victim's death. She said he told her that they were wrestling and the child fell, and later told her that he accidentally dropped the child while bathing him. She testified that she recalled Garcia telling the judge at the custody hearing that he killed the victim on purpose. Campuzzano also testified that Garcia later told her that he had the victim on a countertop for a haircut, went to check on a younger sibling who was crying, then heard the victim hit the floor. CPS caseworker Davis also testified that, at the custody hearing, Garcia repeatedly raised his hand requesting to speak. Davis testified that the judge reminded Garcia repeatedly of his right to remain silent. She testified that Garcia first

3

explained that his son accidentally fell while Garcia was bathing him. She said he later told the court, "I did it on purpose." Davis described the following exchange between the court and Garcia. She testified that the court asked, "[U]nderstanding that you don't have to speak, what did you do on purpose[? Garcia] said kill my own son, okay." The transcript of the hearing and the video clip impart the same information, albeit from Garcia himself. Even if the admission of a transcript of the hearing and the video clip in which Garcia makes the same statements was error, it does not provide a basis for reversal because the same information was admitted through other witnesses without objection. *See Leday*, 983 S.W.2d at 718.

        Affirmed.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Puryear and Waldrop

Affirmed

Filed:   September 29, 2006

Do Not Publish

4