COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-399-CR

 

 

STEVEN RAY GAITAN                                                          APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM
THE 89TH DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                                             OPINION

                                                    

                                              ------------

I.  Introduction








Appellant Steven Ray Gaitan
appeals his conviction for two counts of murder.  In two points, Gaitan argues that his
Confrontation Clause constitutional rights were violated when the trial court
allowed a child witness to testify by closed-circuit television.  For the reasons set forth below, we hold that
the trial court did not err by permitting the child witness to testify by
closed-circuit television and, alternatively, we hold that any error was
harmless.  Accordingly, we affirm the
trial court=s judgment.

II.  Factual and Procedural Background

On October 5, 2004, at about
10:30 p.m., X.P., who was eight years old, and his brother C.P., who was two or
three years old, drove with their mother, Stella P., to the home of a family
friend.  As Stella P. and her sons
arrived at the residence, Gaitan and a passenger, Manuel Garza Gonzales, simultaneously
pulled up in front of the residence. 
Gaitan, Stella P., and her sons all exited the vehicles.  The boys went to the front yard of the
residence while Stella P. and Gaitan talked. 
A confrontation occurred between Stella P. and Gaitan, and Gaitan shot
Stella P.; she fell into the street, bleeding. 
Gaitan tried to place Stella P. into the backseat of her vehicle, but
when he was unsuccessful, he simply drove away. 
Stella P. was left lying in the street where she died.

During the trial, the jury
heard testimony via closed-circuit television from X.P. and live testimony from
Gonzales, along with others.  At the
conclusion of the evidence, the jury convicted Gaitan for the murder of Stella
P., and the trial court sentenced Gaitan to life imprisonment and assessed a
$10,000 fine.  This appeal followed.

 








III.  Right to Confront Witnesses

In his first point, Gaitan
argues that the trial court erred by permitting X.P., a child witness, to
testify by closed-circuit television.[1]  Gaitan contends that the State failed to
prove the necessity for this procedure and that, consequently, he was
improperly denied his right to face-to-face confrontation of the child witness
against him.  In his second point, Gaitan
contends that Texas Code of Criminal Procedure article 38.071, section 3Cthe statute authorizing a child to testify by closed-circuit
televisionCis
unconstitutional as applied to him in this case because the State failed to
prove an interest in protecting X.P. from Gaitan=s presence.[2]  These points are interrelated, so we discuss
them together below.

 

 








A.     The Law

The Texas Code of Criminal
Procedure authorizes a trial court to order that the testimony of a child
younger than thirteen years of age be taken in a room other than the courtroom
and be televised by closed-circuit equipment in the courtroom to be viewed by
the court and the finder of fact if the trial court determines that the child
would be unavailable to testify in the presence of the defendant about an
offense, including murder.  Tex. Code Crim. Proc. Ann. art. 38.071,
'' 1(1), 3(a) (Vernon Supp. 2007); see also Barnes v. State, 165
S.W.3d 75, 84-85 (Tex. App.CAustin 2005, no pet.).  In
making a determination of unavailability, the trial court shall consider
relevant factors, including the relationship of the defendant to the child; the
character and duration of the alleged offense; the age, maturity, and emotional
stability of the child; the time elapsed since the alleged offense; and whether
the child is more likely than not to be unavailable to testify because of
emotional or physical causes, including confrontation with the defendant, or
the child would suffer undue psychological or physical harm through his
involvement at the hearing or proceeding. Tex.
Code Crim. Proc. Ann. art. 38.071, ' 8(a)(1)-(2).








Because this statute operates
to deprive a defendant of face-to-face confrontation, the trial court must hear
evidence and make a case-specific determination:  (1) that the use of the statutory procedure
utilized is necessary to protect the welfare of the particular child witness
who seeks to testify; (2) that the child witness would be traumatized, not by
the courtroom generally, but by the presence of the defendant; and (3) that the
emotional distress suffered by the child witness in the presence of the
defendant is Amore than de
minimis, i.e., more than mere nervousness or excitement or some reluctance to
testify.@  Hightower v. State, 822
S.W.2d 48, 51 (Tex. Crim. App. 1991); Gonzales v. State, 818 S.W.2d 756,
762 (Tex. Crim. App. 1991).  These
findings are not required by the statute but are constitutionally
required.  See also Maryland v. Craig,
497 U.S. 836, 855-56, 110 S. Ct. 3157, 3169 (1990); Hightower, 822
S.W.2d at 51.  If the trial court makes
these findings, then the Confrontation Clause does not prohibit the use of a
procedure that, despite the absence of face-to-face confrontation, ensures the
reliability of the evidence by subjecting it to rigorous
cross-examination.  Gonzales, 818
S.W.2d at 762.

B.     The Facts

The trial court conducted a
pretrial hearing on AThe State=s Motion to Have Testimony of Child Witness Taken Outside the
Courtroom.@  At the hearing, the trial court heard
testimony from Wichita Falls police officer Betty King and heard expert
testimony from Walter Swinhoe, a licensed counselor and therapist. 








Officer King testified that
she talked to X.P. at the scene of his mother=s murder.  Officer King said
that X.P. had witnessed Aa
particularly violent offense@ and that he was in shock when she spoke to him.  X.P. was concerned about his mother and kept
asking Officer King when he would get to see her.  Officer King said that both X.P. and C.P.
were worried about what was wrong with their mother because they had observed
her Alaying at the end of the driveway there on the ground and they weren=t really sure what was wrong with her.@ 








Walter Swinhoe testified that
he was the director of the Taft Counseling Center.  Swinhoe testified that X.P.=s grandmother had arranged for X.P. to receive counseling from him
because X.P. was experiencing negative reactions from his mother=s death, including nightmares, and needed help in grieving for his
mother.  Swinhoe counseled X.P. on April
26, 2006; May 2, 2006; and May 9, 2006. 
Swinhoe testified that X.P. showed increased Aarousal signs,@ increased
agitation, and signs of post-traumatic stress disorder (PTSD).[3]  X.P. was very guarded and avoided talking
about the incident, other than to say that he had heard a firecracker and saw
something at the scene.  Swinhoe said
that X.P.=s avoidance
of talking about the incident is Aone of the greatest signs of trauma.@  Swinhoe testified that he
asked X.P.=s
grandmother to stop talking about the incident because X.P. would cover his
face, get visibly agitated, and show some aggravation or anger when his
grandmother would bring up Amomma or the incident.@ 

When asked whether it would
be harmful to X.P.=s welfare to
have him testify while in the same room with Gaitan, Swinhoe testified:

I
believe that if the perpetrator was in this room and due to the signs and
symptoms, it would definitely exacerbate the signs and symptoms that are
already present and create more night terrors, more of the internal
conflict.  He might not show it, but it
would definitely exacerbate it. 

 

Swinhoe explained that X.P.=s distress from testifying in Gaitan=s presence would be much more severe than just nervousness,
excitement, or reluctance to testify and that it might even create a secondary
trauma.[4]  Swinhoe testified that if the trial court
required X.P. to testify in Gaitan=s presence, X.P. would suffer undue psychological harm and that his
emotional stability could be harmed.  








Swinhoe said that the primary
risk of trauma for X.P. in the courtroom setting would be confrontation with
the perpetrator of the offense and that if confrontation with the perpetrator
could be avoided, that would prevent undue harm to X.P.  Swinhoe explained that for X.P., it would be
particularly traumatic to be put in a room with Gaitan and a lot of people and
ask X.P. to go through the events of October 5, 2004, because X.P. would
develop a new fear based on Gaitan=s presence and the fear of getting in trouble for telling the people
who are present about what Gaitan did. 
Swinhoe based this conclusion on X.P.=s request, expressed during counseling, to find a safe place where no
one could hear him or see him cry when he talked about his mother. 

At the conclusion of the
hearing, the trial court ruled:

Well, having heard the testimony given, I=ve
taken into account all of the factors, including the relationship of the
Defendant to the child, the character and duration of the alleged offense and
the age, maturity and emotional stability of the child and the time elapsed and
I come to the inescapable conclusion that significant trauma would be had
should [X.P.] be required to testify in the same room with the presence of the
Defendant in this matter.

 

So I order that the testimony be taken by
closed-circuit television.  We will
certainly give Mr. Gaitan every opportunity to confer with his attorney and Mr.
Rasmussen will be able to take a break at any time he wishes to do so to confer
with his client on that matter. 

 








The trial court also signed
an order granting the State=s motion.  The order states, in
part:

[T]he
court finds that the child witness in this cause is unavailable to testify
because he would suffer undue psychological and physical harm through his
involvement at trial.  The procedure
provided for the child victim=s testimony to be taken in
article 38.071, section 3 of the Texas Code of Criminal Procedure is necessary
to protect his welfare.  Moreover, the
Court notes that the child would be traumatized by the presence of the defendant
in the courtroom, and that his level of emotional distress would be more than
de minimis.  

 

C.     Application of the Law to
the Facts








The State=s evidence, outlined above, satisfies the statutory and constitutional
requirements needed to authorize the use of closed-circuit television for the
presentation of X.P.=s
testimony.  The evidence establishes that
X.P. is Aunavailable@ to testify
under the statutory definition becauseCconsidering the relevant factorsChe would suffer undue psychological or physical harm through his
involvement at the trial.  See Tex. Code Crim. Proc. Ann. art. 38.071,
' 8(a)(2).  And the evidence
likewise illustrates that the trial court made a case-specific determination
that the use of closed-circuit television to present X.P.=s testimony was necessary to protect X.P.=s welfare, that X.P. would be traumatized by being forced to testify
in Gaitan=s presence,
and that the emotional distress that X.P. would suffer if forced to testify in
Gaitan=s presence would be more than de minimis and more than mere
nervousness, excitement, or some reluctance to testify.  See, e.g., Hightower, 822
S.W.2d at 51; Gonzales, 818 S.W.2d at 762.  Thus, we hold that the State met its burden
and that the trial court=s decisionCespecially considering that X.P.=s testimony was presented live via closed-circuit television and that
Gaitan had the opportunity to and did cross-examine X.P. at trialCdid not violate Gaitan=s Confrontation Clause rights.  See
Gonzales, 818 S.W.2d at 762 (discussing Maryland v. Craig); Francis
v. State, No. 07-05-00293-CR, 2007 WL 1490461, at *2 (Tex. App.CAmarillo May 22, 2007, no pet.) (mem. op.) (not designated for
publication).  We further hold that,
because the State met its burden to present sufficient evidence of the
requisite statutory and constitutional factors, Gaitan=s as-applied constitutional challenge fails; article 38.071, section 3
did not operate unconstitutionally as applied to Gaitan in this case.

D.     No Harm in Any Event








Moreover, even assuming that
the trial court erred by allowing X.P. to testify by closed-circuit television,
X.P.=s testimony was such that it would not have affected the jury=s deliberations or verdict.  Tex. R. App. P. 44.2(a); Wall v.
State, 184 S.W.3d 730, 746 (Tex. Crim. App. 2006) (explaining that A[i]f an appellate court rules that a constitutional error in the
admission of evidence is harmless, it is, in essence, asserting that the nature
of that evidence is such that it could not have affected the jury=s deliberations or verdict@); see also Williams v. State, 958 S.W.2d 186, 194 (Tex. Crim.
App. 1997).








Gaitan himself testified at
the guilt-innocence phase of his trial that he shot Stella P., albeit
accidentally.  And Gonzales=s testimony mirrored X.P.=s testimony.  Gonzales testified
that he heard a gunshot but did not see Gaitan shoot Stella P.  Gonzales testified that he observed Gaitan
trying to place Stella P. into the car and that he saw Gaitan drive away,
leaving Stella P. lying in the street. 
Thus, after carefully reviewing the record and performing the
appropriate harm analysis, even if the trial court erred by permitting X.P. to
testify via closed-circuit television, we hold that beyond a reasonable doubt
the trial court=s error did
not contribute to Gaitan=s conviction
or punishment because other evidence admitted during the trial showed that
Gaitan shot and murdered Stella P.  See
Tex. R. App. P. 44.2(a); see
Davis v. State, 203 S.W.3d 845, 853-56 (Tex. Crim. App. 2006) (holding that
Crawford errorCadmitting
victim=s testimonial statements to officer that supported deadly weapon
findingCwas harmless beyond a reasonable doubt because other evidence at trial
showed that appellant attempted to strangle victim with rope), cert. denied,
127 S. Ct. 2037 (2007); Wall, 184 S.W.3d at 745-46 (holding that error
in admitting statement made by victim at hospital was not harmful because the
other witnesses who testified at trial overwhelmingly established appellant=s guilt, even disregarding the erroneously admitted evidence).  

We overrule Gaitan=s first and second points.

IV.  Conclusion

Having overruled both of
Gaitan=s points, we affirm the trial court=s judgment.

 

SUE WALKER

JUSTICE

 

PANEL A:   CAYCE, C.J.; HOLMAN and WALKER, JJ.

 

PUBLISH

 

DELIVERED:
March 20, 2008











[1]It
appears from the record before us that during X.P.=s
testimony, X.P., the attorneys and the judge went to an adjoining room and that
X.P.=s
live testimony was broadcast from the adjoining room to the courtroom and was
viewed by Gaitan and the jury on a screen in the courtroom.  During X.P.=s
testimony, the trial court repeatedly told Gaitan=s
counsel that he could request a break at any time to confer with his client. 





[2]Gaitan
properly raised his as-applied constitutional challenge in the trial
court.  Accord Curry v. State,
910 S.W.2d 490, 496 (Tex. Crim. App. 1995); 
Barnett v. State, 201 S.W.3d 231, 232-33 (Tex. App.CFort
Worth 2006, no pet.) (both recognizing that as-applied constitutional challenge
is waived if it is not raised in the trial court).





[3]Swinhoe
testified that he was not able to trace the trauma creating the PTSD to this
incident and that before this incident occurred, X.P. started out with a
difficult lifestyle that involved frequently moving. 





[4]Swinhoe
explained that the secondary trauma that might result from X.P.=s
having to testify in Gaitan=s presence Amight
be worse or more difficult to process than even the first trauma, because it=s
almost like survivor=s
guilt.  And . . . when he comes up with
his own fears in reality, it would be worse than the reality itself.@  Swinhoe also stated that Athe
event that create[s] that [anxiety and agitation] would create a lot more
distress in a courtroom.@