# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00795-CR

**Domingo Hernandez, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 427TH JUDICIAL DISTRICT
## NO. D-1-DC-08-900236, HONORABLE MELISSA YOUNG GOODWIN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Domingo Hernandez guilty of two counts of aggravated sexual assault of a child, two counts of indecency with a child by contact, and one count of indecency with a child by exposure. *See* Tex. Penal Code Ann. §§ 21.11, 22.021 (West Supp. 2009). The trial court assessed concurrent prison terms of seventy-five years for the sexual assaults, twenty years for the indecent contacts, and ten years for the indecent exposure. In a single point of error, appellant contends that the court erred by admitting hearsay testimony. We overrule this point and affirm the convictions.

On the evening of February 17, 2007, Jessica M. returned to the apartment she shared with appellant and their three daughters, one of whom was the eight-year-old complainant, J.M.[1] She

---

[1] Appellant was J.M.'s step-father and the biological father of the two younger sisters.

testified that she found appellant and J.M. lying beside each other on the girl's bed. Appellant's pants were unzipped, and J.M.'s head was under the covers of the bed, near appellant's waist. Jessica asked appellant what had happened while she had been out of the apartment. Appellant told her nothing had happened. Jessica testified that after appellant left the room, J.M., who had been pretending to be asleep, got up, went to the bathroom, began to spit in the sink, and rinsed out her mouth.

The next day, after appellant left for work, Jessica asked J.M. about the previous night's events. After initially hesitating, J.M. told her mother, "I don't like the slobber he [appellant] gives me from his pee-pee." Jessica asked J.M. if that had happened the night before. J.M. told Jessica that "he had been trying but she had rejected him." Jessica testified that J.M. told her that appellant had "put his pee-pee" in her mouth on other occasions. After hearing J.M.'s outcry, Jessica called the police.

J.M. testified that appellant touched her in a way she did not like more than once while they were living in the apartment. She said that on the day her mother found appellant in bed with her, appellant "was trying to put me down, like put me down to him, to his middle part." She went on to describe another time this had happened at the apartment. On this other occasion, appellant "pulled his zipper down and he put outside his middle part," and then he "tried to put it in my mouth." J.M. said that appellant told her to "suck on it." J.M. testified that "[s]omething like white" came out of appellant's "middle part" and that some went into her mouth and the rest went on the bed. Using anatomically correct dolls, J.M. demonstrated that when she used the term "middle part," she was referring to her and appellant's genitals.

J.M. also testified to an incident that happened in a house where appellant was working.[2] On this occasion, appellant put his "middle part" in her "middle part." Asked what she felt when this happened, J.M. replied, "Something like sticky, something like that." J.M. testified that this happened more than once.

J.M. testified that she wrote about the things appellant had done in her diary. An undated page from J.M.'s diary was introduced in evidence. Translated from Spanish, J.M. had written, "And he put his thing in mine. He also grabbed my butt. He grab[bed] my breast so he could suck on them. He also tells me to suck on him, his thing so that he can put a white thing in my mouth. Also that thing, he put it in my butt. That's why I always wash my mouth. He kissed me on my mouth and he sucked on my thing."

Semen stains found on the comforter on J.M.'s bed contained appellant's DNA. No DNA mixtures were found on the comforter, and both Jessica and J.M. were excluded as contributors to the stains.

Appellant's point of error concerns the testimony of Dr. Beth Nauert, a pediatrician and expert on child sexual abuse who examined J.M. on April 4, 2007, at the Center for Child Protection. Nauert explained that her evaluations of children who are suspected of being victims of sexual abuse have three parts: interview, physical examination, and laboratory testing. Over appellant's hearsay objection, Nauert testified that J.M. told her during the interview that appellant touched her repeatedly "from the time she was seven years old until the police came." Reading from her case notes, Nauert testified, "She said she was touched on, quote, my pee-pee, end quote, and

_____

[2] The evidence reflects that appellant was a painter and tile-worker, and he often took J.M. with him to job sites.

3

mi atras, end quote." Nauert testified that based on her experience with Spanish-speaking patients, she understood "atras" to mean "behind." She said that J.M. had "pointed to her bottom or rectal area when she used this word." Nauert said that when she asked J.M. what her father touched her with, "she said, quote, con su cuerpo, end quote." Nauert testified that she understood "con su cuerpo" to mean "with his body," adding that when J.M. said this, "she put her hand over her own genitals, her own crotch, but she was talking about her father at the time, so indicating between the legs." Nauert testified that J.M. "seemed to be indicating to me very carefully she was talking about a penis."

Nauert testified that she observed nothing out of the ordinary during her physical examination of J.M. She said that the examination neither confirmed nor rebutted J.M.'s accounts of sexual abuse. Nauert did cultures for gonorrhea and chlamydia, but these tests were negative.

Appellant contends that J.M.'s hearsay statements to Nauert were erroneously admitted because the State failed to lay the predicate required under the medical diagnosis and treatment exception to the hearsay rule. *See* Tex. R. Evid. 803(4). When an objection properly identifying proffered testimony as hearsay is made, it becomes the proponent's burden to establish that the testimony is admissible under some exception to the hearsay rule. *Taylor v. State*, 268 S.W.3d 571, 578-79 (Tex. Crim. App. 2008); *Cofield v. State*, 891 S.W.2d 952, 954 (Tex. Crim. App. 1994). Because the State relied on the rule 803(4) exception, it was the State's burden to show that (1) J.M. made the statements for the purpose of obtaining medical diagnosis or treatment, and (2) J.M.'s statements to Nauert were reasonably pertinent to medical diagnosis or treatment. *See Taylor*, 268 S.W.3d at 588-89, 591; *Barnes v. State*, 165 S.W.3d 75, 82 (Tex. App.—Austin 2005, no pet.). We review the court's decision to admit the testimony for an abuse of discretion.

4

*See Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1991) (op. on reh'g); *Barnes*, 165 S.W.3d at 80.

Appellant argues that J.M.'s statements to Nauert, and in particular those statements identifying appellant as the abuser, were not shown to be pertinent to diagnosis or treatment because there is no evidence that Nauert made any diagnosis or prescribed any treatment. But the fact that Nauert found no physical evidence of abuse or did not prescribe any treatment for physical injuries does not mean that her interview with J.M. was not reasonably pertinent to diagnosis or treatment. As the doctor explained to the jury, taking a history from the patient is a routine part of medical practice: "[I]n my regular office when a child comes in with any complaint, I sit down with these kids first and I say, tell me what happened, and then I'll ask them some specific questions about any symptoms or problems they're having at the time." She continued, "It's the same thing with physical or sexual abuse. I would like to hear, if possible, in the child's words what happened to them." The interview, Nauert testified, helps her determine whether a child has been in fact sexually abused and whether a child's symptoms are consistent with sexual abuse. Based on this testimony, the trial court could find that the statements J.M. made to Nauert during the preliminary interview, including those identifying appellant, were reasonably pertinent to diagnosis or treatment.[3]

---

[3] Appellant argued below that the interview was not necessary to diagnosis or treatment because Nauert could have conducted a physical examination without it. The trial court found this argument unpersuasive, observing that "[t]he fact that the doctor could have done an exam without the history is not the point." Appellant does not pursue the line of argument on appeal, and the State urges that he failed to preserve any other argument pertinent to the admission of the challenged testimony. Although appellant has broadened his attack on appeal, however, the issue remains the same: whether the State laid the predicate for admission under rule 803(4) in response to appellant's proper hearsay objection.

The closer question is whether the State established that J.M. made her statements to Nauert for the purpose of medical diagnosis or treatment. Rule 803(4) is premised on the patient's selfish motive in receiving appropriate medical treatment. *Jones v. State*, 92 S.W.3d 619, 623 (Tex. App.—Austin 2002, no pet.). Thus, the declarant must have a motive consistent with obtaining medical care, knowing that proper diagnosis or treatment depends upon the veracity of her statements to the physician. *Id*. As this Court has previously written, a child may not understand that it is in her self-interest to be truthful with a physician, and thus the assumption that a person seeking medical help will speak truthfully may not apply when the declarant is a child. *Barnes*, 165 S.W.3d at 82.

Appellant urges that the record fails to demonstrate that J.M. understood the purpose of her interview with Nauert or the importance of telling the truth during the interview. There is no evidence that Nauert explained the purpose of the interview to J.M. before taking the child's history, and there is no direct evidence that Nauert had otherwise determined that J.M. understood the need to be truthful. But as the court of criminal appeals has written in reference to statements made "on the physicians's cold examination table":

> [I]t seems only natural to presume that adults, and even children of a sufficient age or apparent maturity, will have an implicit awareness that the doctor's questions are designed to elicit accurate information and that veracity will serve their best interest. This explains the almost universal tendency of courts under these circumstances to assay the record, not for evidence of such an awareness, but for any evidence that would *negate* such an awareness, even while recognizing that the burden is on the proponent of the hearsay to show that the Rule 803(4) exception applies.

6

*Taylor*, 268 S.W.3d at 589 (footnote omitted).[4]  In another case involving statements by a child sexual abuse victim to Nauert, this Court held that the circumstances supported an inference that the child understood the need to be truthful even though the doctor had not specifically inquired. *Barnes*, 165 S.W.3d at 83.

J.M. was eight years old at the time she spoke to Nauert.  We cannot say as a matter of law that a child this age is too young to appreciate the need to be truthful when speaking to a doctor about physical or sexual abuse.  Nauert testified that she prefers to interview a child alone, without the presence of family members, "if the child is old enough," and that is what she did here.[5] Nauert indicated in response to questions by the prosecutor that she observed J.M.'s demeanor and that the child did not manifest any developmental problems or appear delusional or psychotic. Clearly, the record would be stronger if Nauert had expressly testified that she assured herself that J.M. understood the importance of being truthful before conducting her interview.  But given Nauert's testimony stressing the importance of the interview to her examination, we believe that it is reasonable to infer that Nauert would not have interviewed J.M. alone if the doctor had any reason to believe that J.M. would not or could not accurately recount her experiences.  There is nothing in the record that would negate a finding that J.M. appreciated the need to be truthful.  *See Taylor*,

---

[4] Although the quoted passage deals with examinations by medical doctors, the issue in *Taylor* was the admissibility under rule 803(4) of statements made by a child to a licensed professional counselor during counseling sessions months after the sexual abuse came to light.  *Taylor v. State*, 268 S.W.3d 571, 574 (Tex. Crim. App. 2008).  The opinion suggests that in the latter context, it is impermissible to presume the predicate facts required for admission under rule 803(4).  *See id.* at 582, 592.  In his brief, appellant mistakenly assumes that this suggestion applies to statements made to a medical doctor.

[5] Nauert testified that an interpreter was present during the interview.

268 S.W.3d at 589. On this record, the trial court could reasonably find that J.M. understood the importance of being truthful when speaking to the doctor.

The trial court did not abuse its discretion by admitting Nauert's hearsay testimony under rule 803(4). The point of error is overruled, and the judgment of conviction is affirmed.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed:   July 13, 2010

Do Not Publish