COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-06-455-CR

 

 

DONALD JOSEPH BANKS, SR.                                               APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM
THE 78TH DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Because we made a minor
modification to our original opinion, in the addition of a footnote to page 4,
we withdraw our prior opinion of May 22, 2008, and substitute the following
memorandum opinion in its place.

 

 








I.  Introduction

In two issues, appellant
Donald Joseph Banks, Sr. appeals his convictions for one count of injury to a
child and one count of aggravated sexual assault. He asserts that the trial
court erred by allowing a child, AJane Doe,@ to testify
by videotaped closed-circuit television because the State failed to prove the
necessity of such procedure and because the statute authorizing the procedure
was unconstitutional as applied to him. 
We affirm.

II.  Factual and Procedural History

The State alleged that, on
June 5, 2005, Banks anally penetrated his eight-year-old granddaughter, AJane Doe,@ when she spent
the night at his residence.  Doe told her
mother the next day about what had happened, and Banks was arrested.  








On August 7, 2006, a pretrial
hearing was held on a motion to quash the State=s subpoena of Doe, to determine whether to allow Doe=s recorded testimony.  Carissa
Matlock, Doe=s guardian
ad litem, testified that, based on her relationship with Doe and her review of
the records provided by Doe=s counselor, Arthur Madden, she did not feel that it would be in Doe=s best interest to testify in this case, either live or by closed
circuit television.  Matlock added that
she would do whatever possible to stop Doe from having to testify because Doe
was starting to make progress.  However,
Matlock did state that it would be better for Doe to testify now than to wait
until some point in the future to bring the case. 

A statement from Madden was
also considered at this hearing.  It read
in part: 

4.  In order to effectively process past abuse,
the patient must build a meaningful relationship with me and feel comfortable
discussing the events and associated trauma.

 

5.  Only within the last month has [Doe] been
able to form such a relationship with me and been willing to approach the
subject of the abuse at the hands of her grandfather.

 

6.  On June 26, 2006, during our session, for the
first time, she gave me her full recollection of the events surrounding her
grandfather=s
abuse, but made clear to me that she would tell the story only one time and did
not want to talk about it again.

 

7.  I do not believe that [Doe] will re-tell the
events, especially in a strange environment and to strangers.  I predict that she will likely refuse to
speak about the assault.

 

8.  I believe that to repeat her recollection or
to face questions about the assault will be harmful to [Doe]. [Doe] has already
been struggling in a therapeutic environment and she should not be forced to
repeat her recollections.

 

9.  I believe that to testify or respond to
questions about the abuse will result in more trauma to [Doe].

 

10.  I have no reason to believe that [Doe]=s
version of the events surrounding her grandfather=s
assault is not true.

 

11.  In conclusion, from a clinical standpoint, I
do not believe that it is in [Doe]=s best interest to be questioned or be forced to testify about the
assault at this time. 








The trial court ruled,  

So I=m
going to go back and basically make the finding based on everything that I=ve
been provided that the child is younger than 13 years of age, is unavailable to
testify in the presence of the Defendant as outlined in the requirements and
the conditions for making such a finding. 
I=m
going to basically say that the testimony is going to be done by closed circuit
television[.]

 

The trial court=s subsequent Order read in part,

The child, [Doe], is under thirteen (13) years of
age.

 

The child, [Doe], is unavailable to testify in
the presence of the Defendant, [Banks], within the meaning of article 38.071 of
the Texas Code of Criminal Procedure. . . . [T]he child=s
trial testimony shall be taken via closed-circuit television on that date.  Counsel for the State and Counsel for the
Defendant shall be permitted to question the child fully at this time . . . .
[T]he Defendant shall be permitted to view and hear the testimony of the child
as it progresses, via one-way monitor. 
Defendant=s
counsel shall be permitted to take breaks and consult with the Defendant as
necessary.

 

On August 23, 2006, the trial court conducted a
hearing in which Doe=s videotaped
testimony was taken.[2]  At the conclusion of testimony in the
hearing, the Court clarified that Banks had the opportunity to converse with
counsel during the hearing, and that the conversations took place whenever they
were requested.








On October 2, 2006, Banks pled
not guilty to both counts.  Banks
objected to the showing of Doe=s videotape, and the trial court overruled his objection.  Doe=s previously recorded testimony was shown to the jury, and numerous
other witnesses testified.  The jury
found Banks guilty of injury to a child and aggravated sexual assault,
assessing punishment at ten years= confinement on the injury to a child count and ninety-nine years= confinement on the count of aggravated sexual assault.  This appeal followed.

III. Face-to-Face
Confrontation 

In his first issue, Banks
complains that he was denied his right to confront Doe in person because the
State failed to prove the necessity of allowing her testimony to be presented
by videotape.  Specifically, Banks argues
that there was insufficient proof presented to the trial court that his
presence would cause trauma to Doe and that the trial court should have
reassessed the Aunavailability@ of Doe at the time of trial.  

A.  Standard of Review








When determining whether the
trial court correctly determined that Doe would not be required to confront
Banks face to face, we review the court=s ruling for an abuse of discretion. 
Rangel v. State, 199 S.W.3d 523, 531 (Tex. App.CFort Worth 2006, pet. dism=d); Barnes v. State, 165 S.W.3d 75, 84 (Tex. App.CAustin 2005,
no pet.).  We will not reverse a trial
court=s ruling that is within the zone of reasonable disagreement.  See Green v. State, 934 S.W.2d 92, 102
(Tex. Crim. App. 1996), cert. denied, 520 U.S. 1200 (1997); Montgomery
v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh=g).

B.  The Statutory Requirements for Videotaped
Testimony of a Child

Article 38.071 of the Texas
Code of Criminal Procedure, entitled ATestimony of child who is victim of offense,@ sets forth, inter alia, the parameters for videotaping a child=s testimony and the requirements for the trial court to determine when
a child is Aunavailable@ to testify in the presence of the defendant about a sexual
offense.  Tex. Code Crim. Proc. Ann. art. 38.071 (Vernon Supp.
2007).  Specifically, sections 4 and 8 of
the article read in part as follows:

Sec.
4. (a) After an indictment has been returned . . . the court may order that the
testimony of the child be taken outside the courtroom and be recorded for
showing in the courtroom before the court and the finder of fact. . . . The
court shall permit the defendant to observe and hear the testimony of the child
and to communicate contemporaneously with his attorney during periods of recess
or by audio contact but shall attempt to ensure that the child cannot hear or
see the defendant.

 

(b)
The court may set any other conditions and limitations on the taking of the
testimony that it finds just and appropriate, taking into consideration the
interests of the child, the rights of the defendant, and any other relevant
factors.  The court shall also ensure
that:

 








(1)
the recording is both visual and aural and is recorded on film or videotape or
by other electronic means[.]

 

. . . . 

 

Sec.
8. (a) In making a determination of unavailability under this article, the
court shall consider relevant factors including the relationship of the
defendant to the child, the character and duration of the alleged offense, the
age, maturity, and emotional stability of the child, and the time elapsed since
the alleged offense, and whether the child is more likely than not to be
unavailable to testify because:

 

(1)
of emotional or physical causes, including the confrontation with the
defendant; or 

 

(2) the
child would suffer undue psychological or physical harm through his involvement
at the hearing or proceeding.

 

(b) A
determination of unavailability under this article can be made after an earlier
determination of availability.  A
determination of availability under this article can be made after an earlier
determination of unavailability.

 

Id. art.
38.071, '' 4, 8.  Such statutory
schemes have been generally approved by the United States Supreme Court.  See Maryland v. Craig, 497 U.S.
836, 857, 110 S. Ct. 3157, 3169 (1990) (concluding that a statutory procedure
utilizing closed-circuit television for receipt of testimony did not violate a
defendant=s rights
under the Confrontation Clause articulated in the Sixth Amendment in the United
States Constitution).  

In Craig, the Court
said,








if
the State makes an adequate showing of necessity, the state interest in
protecting child witnesses from the trauma of testifying in a child abuse case
is sufficiently important to justify the use of a special procedure that
permits a child witness in such cases to testify at trial against a defendant
in the absence of face-to-face confrontation with the defendant.

 

Id. at 855,
110 S. Ct. at 3169 (emphasis supplied). 
In making this Anecessity@ finding, our court of criminal appeals has held that it 

must
be on a case by case basis.  A[T]he
trial court must hear evidence and determine@:  First, Awhether
use of the one‑way closed‑circuit procedure is necessary to protect
the welfare of the particular child witness who seeks to testify.@  Second, the trial court must also find
Athat
the child witness would be traumatized, not by the courtroom generally, but by
the presence of the defendant.@  Third and finally, the trial court
must determine that the emotional distress suffered by the child witness in the
presence of the defendant is Amore than de minimis, i.e.,
more than mere nervousness or excitement or some reluctance to testify.@  If the trial court makes these three
findings, then Athe
Confrontation Clause does not prohibit the use of a procedure that, despite the
absence of face‑to‑face confrontation, ensures the reliability of
the evidence by subjecting it to rigorous adversarial testing and thereby
preserves the essence of effective confrontation.@

 

Gonzales v. State, 818 S.W.2d 756, 762 (Tex. Crim. App. 1991) (citations omitted), cert.
denied, 507 U.S. 939 (1993).

C.  Application








In reviewing article 38.071,
we first note that Doe was only nine years old at the time of trial, thus
meeting the statute=s Aunder age thirteen requirement.@  Tex. Code Crim. Proc. Ann. art. 38.071, ' 1.  Like in Barnes,
the trial court conducted a hearing on the necessity for using closed-circuit
television but did not make express findings of fact and conclusions of
law.  See 165 S.W.3d at 84.  By permitting the use of the closed‑circuit
television system, however, the court implicitly made the constitutionally
required findings.  See id.  Banks urges that the evidence adduced at the
hearing is not sufficient to support these findings. 

An initial review of section
8(a) of article 38.071 reveals that there are two circumstances under which it
may be determined that a child is Aunavailable@ to testify,
due to (a) emotional or physical causes, which include confrontation of the
accused, or (b) the suffering of undue psychological or physical harm through
the involvement of the accused in the hearing. 
Tex. Code Crim. Proc. Ann. art.
38.071, ' 8(a).  Matlock=s testimony, as guardian ad litem, and Madden=s letter appear to satisfy the first circumstance.  However, it is unclear whether this
circumstance satisfies the requirement, imposed by our court of criminal
appeals in Gonzales, Athat the child witness would be traumatized, not by the courtroom
generally, but by the presence of the defendant.@  Gonzales, 818 S.W.2d at
762.  








Here, we seem to have a
middle ground, wherein the concern expressed by Matlock and Madden is for the
child having to recount the occurrence itself and the questioning of the
surrounding events concurrent therewith. 
Naturally, this would occur in a trial setting with the defendant
present.  However, at no point did either
Madden or Matlock directly mention that the defendant=s presence was the source of the trauma.  Rather, it was the questioning and the
recounting of the occurrence that they described as the source of the
trauma.  Hence, we cannot say that
article 38.071, section 8(a)(1) was satisfied, or that section 8(a)(2) would
have been.  Therefore, there was
insufficient evidence to support the trial court=s order, constituting an abuse of the trial court=s discretion.

D. Harm Analysis  

Having found error, we must
conduct a harm analysis to determine whether the error calls for reversal of
the judgment.  Tex. R. App. P. 44.2. 
For a constitutional error, we apply rule 44.2(a) and reverse unless we
determine beyond a reasonable doubt that the error did not contribute to the
appellant=s conviction
or punishment.  Tex. R. App. P. 44.2(a). 









Our harmless error analysis
should not focus on the propriety of the outcome of the trial; instead, we
should calculate as much as possible the probable impact on the jury in light
of the existence of other evidence.  Wesbrook
v. State, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000), cert. denied,
532 U.S. 944 (2001).  We consider the
source and nature of the error, the extent that it was emphasized by the State,
its probable collateral implications, the weight a juror would probably place
on the error, and whether declaring it harmless would be likely to encourage
the State to repeat it with impunity.  Harris
v. State, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989).  This requires us to evaluate the entire
record in a neutral, impartial, and even-handed manner, not Ain the light most favorable to the prosecution.@  Id. at 586.








Doe=s general videotaped testimony from the closed circuit hearing was
that, when she was eight years-old, she and her brothers stayed over at Banks=s house after her mother dropped them off at a park and left them with
Banks.[3]  While she was in bed asleep, Banks pulled
down her shorts and panties and stuck his Abody part@ in her Abum-bum,@ which woke
her.[4]  After she woke up, she went into the bathroom,
and after she wiped, she saw blood; she had not been bleeding before she went
to sleep.  After she left the bathroom,
she went into the living room to sleep. 
Later, when she woke up, Banks took her back to her house, where she
told her mother what had occurred.  Doe
also stated that she told Banks that she was going to tell her mother what he
had done and after she told her mother, the police came, and she was taken to a
hospital where a nurse examined her and took the clothing that she had been wearing
at the time of the alleged sexual assault. 


The question here is whether
the trial court=s order
allowing Doe to give this testimony via closed-circuit television was harmless
beyond a reasonable doubt.  See Williams
v. State, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997).  In applying the Aharmless error@ test, our
primary question is whether there is a Areasonable possibility@ that the error might have contributed to the conviction.  Mosley v. State, 983 S.W.2d 249, 259
(Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526 U.S. 1070 (1999).

1. State=s Witnesses

Callie Siegler, the Sexual
Assault Nurse Examiner (ASANE@) coordinator at United Regional Hospital, testified that she had
participated in Doe=s
examination on June 5, 2005, and described the history she took from Doe.  She recorded on her medical chart, word for
word, that Doe told her that Banks had humped her, that he ceased when she woke
up, and that it hurt.  Siegler stated
that, as they were about to begin the physical exam, Doe told her that Banks
had Aput it inside me@ and she
pointed between her legs.  








Siegler then testified that
the physical examination revealed a fresh tear posterior to the anus containing
frank blood that was an inch and a half in length.[5]  She observed Doe=s injured area with both a colposcope and with the naked eye.  Siegler testified that State=s Exhibit 11 was a photograph of the genital area of Doe, and that it
showed a tear that was very close to the entrance of the anus. Siegler
testified that it was significant that there was a tear in that area, as
positive findings are found in less than 10% of examinations.  Siegler testified that the tear was
consistent with Doe=s history of
sexual assault, although that type of injury was consistent with blunt force
trauma, which could be caused by things other than a male penis.








 Estes testified that there was no trauma to
Doe=s vaginal area, but that there was an abrasion on the rectum that
contained frank blood, and opined that based on her experience and training,
the tear of Doe=s rectum was
a fresh tear.  Estes testified that State=s Exhibit 6 was a photograph taken with a colposcope of Doe that shows
the tear posterior to Doe=s anus.[6]  Estes testified that the tear was consistent
with anal penetration by the male sexual organ, but agreed that there were
causes other than anal penetration for that type of injury.  She testified that, to her knowledge, there
was no trauma to the anus and that there was no evidence of any type of
lubrication.

Deanna Tofte, a Wichita Falls
police officer, testified that she had been the lead investigator in the Banks
case.  She testified that she had been
dispatched on June 5 in the evening on a report of possible sexual assault that
had occurred on June 4, and that the alleged victim was Doe.  Officer Tofte testified that she took Doe to
the hospital, waited while the exam was performed, and then took Doe to the
child advocacy center, where Tracy Anderson of CPS interviewed Doe.  Officer Tofte stated that Doe=s interview was recorded and that she watched the interview through a
two-way mirror.  Based on Doe=s statement and the medical exam results, she obtained a search
warrant, served the warrant at Banks=s residence, and arrested him.[7]









Officer Tofte testified that
after she arrested Banks, she Mirandized[8]
him and then obtained a videotaped statement. 
Tofte further testified that she did not threaten, coerce, or abuse
Banks, nor promise him anything or deny him water or access to the restroom.  Tofte testified that State=s Exhibit 4 was an original recording of Banks=s statement.  State=s Exhibit 4 was published to the jury.

Tammy Byers, a lab analyst
with the Department of Public Safety (ADPS@), testified
that when she received State=s Exhibit 7, a box containing vaginal and anal swabs and Doe=s clothing, she unsealed the box and tested its contents.  She testified that she did not detect any
semen or spermatozoa on the vaginal or anal swabs or on any of the
clothing.  Byers further stated that
there was a presumptive test for the presence of blood done on a stain in the
crotch area of the panties, and that it was positive, but that, without DNA,
she could not specifically state that it was human blood, and that she had no
way to tell how long the blood had been there.

Madden, Doe=s counselor, testified that on June 26, 2006, Doe told him about the
alleged assault.  He read verbatim the
following from his report:

It
says, [Doe] states that at her grandfather=s . . . house in the middle
of the night, he woke her up.  She states
he was lying behind her, and said that they were both on their sides.  She states he pulled down her shorts and was
humping her.  She states it hurt, and she
said, I=m
going to tell Momma.  He said, I didn=t do
it, and if I did, I=m
sorry.  

 








She states
that she went to the bathroom and discovered she was bleeding from the rectum.  She states she then went to the living room,
where her grandfather=s girlfriend
was sleeping on the couch.  She states
Margie . . . woke up and gave her a sheet, and [Doe] slept on the couch.

[Doe] said her grandfather . . . took them home
the next morning, and she told her mother as soon as she got home.  Her mother reportedly phoned the police.

 

Madden further testified
that, in his experience, children typically prefer not to disclose abuse, that
it was unusual for the alleged victim to confront the alleged abuser, and that
it did not appear Doe was being used by anyone. 
Although Madden also testified that part of the reason Doe had been
brought to counseling was physical abuse and neglect perpetrated by her mother,
he restated that, in his experience and training, eight-year-old females do not
typically dream about being sexually assaulted and that Doe exhibited signs and
symptoms consistent with sexual assault.

2. Defense Witnesses








Dr. David Sabine, a clinical
psychologist, testified that he had been asked to perform a psychological
evaluation of Doe and that he had performed an assessment of her intellectual,
academic, and emotional functioning.  Dr.
Sabine testified that there was no evidence in the tests that he conducted to
support the idea of sexual abuse. 
However, he also stated that he was not testifying that sexual abuse had
not occurred, and that a child with Oppositional Defiant Disorder,[9]
which Doe has, could be sexually abused. 
He added that Doe=s
low-average range intellectual ability made it less likely that she would
fantasize about sexual abuse.  Dr. Sabine
also testified that while it is common for Oppositional Defiant children to lie
about things, it is uncommon for them to lie about sexual abuse.  








Dr. Marvin Leon Morris, a
forensic psychologist, testified that although he had not examined Doe, he had
reviewed records, reports, transcripts, and videotapes related to her.  He further testified that he felt that the
CPS interviewer did not ask the questions in a neutral way and might have
biased Doe.[10]  Dr. Morris testified that he was not asked to
tell the jury whether Doe was abused, but rather, to tell the jury about what
he felt to be a faulty interview technique utilized by CPS.  However, he also testified that he had never
performed the type of interview that CPS had performed and that he was only
there to testify about the proper procedure for concluding an interview.  He did not have an opinion whether the CPS
interviewer, the SANE nurses, Madden, or anyone else was not neutral prior to
interviewing Doe. 

Dr. Coffman testified that
she had reviewed reports and photographs in this case and found that, while
there did not appear to be injury to Doe=s anus, there was an acute tear near Doe=s anus, the location of which was unusual in victims of sexual
abuse.  However, although she testified
that anything that might stretch the area of the anus could have caused the
tear and bleeding that occurred, she also testified that her findings were in
agreement with Siegler and Estes=s findings.  She added that
fewer than 5% of cases involving anal penetration have positive findings in a
medical exam of anal penetration.  She
testified that the history given by Doe was consistent with the medical
findings of Siegler and Estes=s examination.








Banks testified that the
allegations against him were false.  He
testified that Doe=s mother
would regularly drop Doe and her siblings off with him and that the children,
including Doe, had lived with him for a few months of the prior year.  He testified that on June 4, 2005, he had
been drinking beer and vodka in the park with some friends and that he was
taking some medications at the time. 
While he was at the park, Doe=s mother dropped Doe and her siblings off at the park with him, where
they remained for a couple of hours. 
After picking up his girlfriend, Banks and the children went to his
house.  He testified that he, Eddie, and
TravonCDoe=s brothersCwatched TV in the bedroom, while Doe and her sister and his girlfriend
watched TV in the living room.  Doe
joined Banks and her brothers when it started storming outside, because she was
scared of thunderstorms.  

Banks testified that, after a
while, the children fell asleep and he lay down in the bed with Doe=s back to him.  Banks then
testified that he fell asleep, and the next thing he remembered was Doe telling
him that she was hurting down there.[11]  Banks testified that Doe claimed that he had
poked her Adown there,@ and that he told her that, if she hurt down there, to make sure she
told her mother.  He testified that he
did not try to have anal sex with Doe that evening and that he kept the
children until around 3:00 p.m. the next day, when he took them to their mother=s house.








Banks stated that he had not
done anything to Doe, and that he did not know who did.  Banks further testified that he did not know
if eleven-year-old Travon had done it, and that he did not think that
five-year-old Eddie had done it.  Banks
admitted that, at the beginning of Officer Tofte=s interview, he stated that Doe was making the story up to get her
mother=s attention, because she was tired of being dropped off by her mother,
and that Doe was mad at her mother so she took it out on him.  

Banks also testified that he
had never spoken to anyone who raped an eight-year-old, so he would not know if
a man would remember doing it.  Banks
admitted that he had no evidence to call Doe a liar, nor did he have evidence
to prove that anybody told her to make up her story.  Banks testified that he did not like anal sex
and that he was passed out that night.[12]


3. State=s Rebuttal Witness

Tracy Anderson, Doe=s CPS investigator, testified that she interviewed Doe in June 2005
and that the full interview, Exhibit 15, was videotaped.[13]  A review of Exhibit 15 reveals that the
evidence shown on this tape is the same evidence with regard to Banks=s actions on June 5, 2005 as was shown on Exhibit 12, Doe=s videotaped deposition.

4. Analysis








The trier of fact is the sole
judge of the weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v.
State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  The jury had the opportunity to observe Banks
during his testimony and draw their own conclusions about his credibility, and
the credibility of all of the other witnesses. 
The jury had the opportunity and responsibility to weigh that evidence
and determine whether, beyond a reasonable doubt, Banks committed the offenses
of aggravated sexual assault and injury to a child.[14]  








In light of the substance of
Doe=s testimony, which the jury heard from several other witnesses, and
the CPS interview videotape, which essentially provided the same testimony by
Doe herself, the error Banks complains of could not have prejudiced the jurors= decision-making, or their ability to properly apply law to facts in
order to reach a verdict.  See Harris,
790 S.W.2d at 587B88.  After carefully reviewing the record and
performing the required harm analysis under rule 44.2(a), we hold beyond a
reasonable doubt that the trial court=s error did not contribute to Banks=s conviction or punishment.  See
Tex. R. App. P. 44.2(a).  And because of our determination that any
error regarding the admission of the videotape was harmless, it is unnecessary
to reach Banks=s argument
that Doe=s Aunavailability@ should have been reassessed at the time of trial.  We overrule Banks=s first issue.  See Tex. R. App. P. 47.1.  

V.  Constitutional Challenge

In his second issue, Banks
makes an Aas applied@ challenge to the constitutionality of article 38.071 of the Texas
Code of Criminal Procedure.  However, an Aas applied@ constitutional
challenge must be raised at the trial court level.  Curry v. State, 910 S.W.2d 490, 496
(Tex. Crim. App. 1995); see also Tex.
R. App. P. 33.1(a)(1); Mosley, 983 S.W.2d at 265.  

Banks failed to raise this
challenge to the trial court.  Therefore,
Banks has failed to preserve any error for our review.  Banks=s second issue is overruled. 

VI.  Conclusion

Having overruled Banks=s two issues, we affirm the judgment of the trial court.

 

 

BOB MCCOY

JUSTICE

 

PANEL A:   CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

 

CAYCE,
C.J. concurs without opinion.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 








DELIVERED:
July 3, 2008











[1]See Tex. R. App. P. 47.4.





[2]AJane Doe@ was cross-examined extensively by
defense counsel, consisting of some thirty-nine pages from the court reporter=s record.





[3]Doe testified both that this was
the first time she had stayed at Banks=s house and that she had slept there on prior occasions.





[4]After
being shown diagrams of a male and female body, Doe stated that she called her
rear end both her bum-bum and her butt, that she had referred to Banks=s
penis as his body part, and that his penis was what he had put in her bum-bum. 





[5]Jamie
Estes, another SANE, who performed Doe=s examination with Siegler,
defined frank blood as fresh, red blood from an actively bleeding abrasion.





[6]Estes
also testified that Dr. Jayme Coffman, from Cook Children=s
Hospital in Fort Worth, was emailed a copy of the photos.  Dr. Coffman, a pediatrician and healthcare
provider to child victims of sexual abuse, also testified at trial, during
Banks=s
case in chief.  Estes testified that Dr.
Coffman had noted that the tear was in the perineum, but explained that the
emailed photos had not included the rectum; thus, there was no frame of
reference for Dr. Coffman to determine what area of Doe=s
body she was looking at.





[7]Officer Tofte admitted that, in the
search warrant, she made a mistake in her Aarticulation of the actual injury and how it occurred.@





[8]Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602
(1966).

 





[9]Dr. Sabine testified that
Oppositional Defiant Disorder

 

is a disorder of childhood that=s characterized by children who are often oppositional,
meaning that they resist authority and they=re defiant.  They
often will say no when asked to do things. 
It also involves sometimes lying and stealing and acting out in terms of
behavioral dyscontrol, being unable to manage their behavior well.





[10]Morris
also stated that he had a problem with the videotaping done by the trial court,
as he felt leading questions were asked by both the State and Banks=s
counsel. 





[11]Banks testified, AAnd then she said, Papa, I=m hurting.  And I saidCI told her not to let nobody hurt her down there, including
me.@





[12]Banks=s attorney asked him, ADid you know you were having anal
sex with her?@ 
Banks=s reply was inaudible.





[13]State=s
Exhibit 15 was admitted over Banks=s objection and was published
to the jury.  





[14]See Tex.
Penal Code Ann. ' 22.021(a)(1)(B)(i) &
(2)(B) (Vernon 2007) (stating that a person commits an offense if that person,
intentionally or knowingly causes the penetration of the anus of a child by any
means when the victim is younger than fourteen years old); Id. ' 22.04(a) & (h)
(describing the injury to a child offense and stating that the offense may be
subjected to prosecution under both this section and another section of the
penal code).