# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00718-CR

**Jamaal Larome Green, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT
### NO. 64040, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

Appellant Jamaal Larome Green was found guilty of aggravated sexual assault and sentenced to 60 years' imprisonment. *See* Tex. Penal Code Ann. § 22.021 (West Supp. 2009). On appeal, Green seeks a new trial, arguing that the trial court erred when it denied his motion for a mistrial after the prosecutor impermissibly offered her personal opinion of the evidence in final argument, and that the trial court erred by overruling Green's objection to the State's attempt to vouch for or bolster the credibility of the complaining witness during closing. In addition, Green seeks modification of the judgment, arguing that it improperly contained an order to pay court costs, attorney's fees, and restitution. We modify the judgment as it pertains to attorney's fees and affirm the judgment as modified.

## BACKGROUND

In December 2009, Green was indicted for aggravated sexual assault.[1] *See id.* The incident giving rise to Green's prosecution occurred in Bell County shortly after midnight on April 9, 2008. According to her testimony at trial, the victim, Jane Doe,[2] was working as a prostitute in Killeen when Green drove up to her in a "silvery-colored" SUV and asked her to get in, instructing her to get into the back seat. After Doe told Green that her services would cost $20, Green drove to a bank and parked near the ATM machine. Green walked over to the ATM, withdrew cash, and returned to the SUV, giving Doe $20.[3]

Doe testified that they next drove to an apartment complex, where they attempted to have sex in the SUV. Green, however, was unable to maintain an erection. They then drove to the parking area of Zip Cleaners, located on Gilmer Street in Killeen. They again attempted to have sex in the SUV, but Green was once again impotent. Doe, who stated that the transaction had taken roughly one hour to that point, told Green that she would not engage in any further sexual relations with him. She then gave $8 back to him and exited the vehicle.

---

[1] The facts recited herein are taken from the testimony and exhibits admitted at trial.

[2] The pseudonym "Jane Doe" was used in the indictment and in the trial court's charge. Although the actual name of the victim was used in the courtroom at trial, we will continue to use the pseudonym in this opinion.

[3] Bank records indicate that $20 was withdrawn from Green's account at 2:32 a.m. on the night in question. The ATM video showed that no vehicle had pulled up to the ATM when the withdrawal was made.

Doe stated that Green exited the SUV and called after her, asking where he could find her in the future. According to Doe, Green then placed something elastic[4] around her throat before slinging her face-first onto the asphalt parking lot. Green continued to choke her and throw her down onto the pavement, telling Doe that he wanted his money back. Though Doe then returned the $20 Green had given her, he continued to beat her, and then dragged her across the pavement to an area behind the cleaners. After continuing to beat her, he forced her to her knees and pushed her face down onto the pavement. He then attempted to penetrate her anus and genitals, wetting his penis and her anus with water from nearby puddles. After attempting to penetrate her for several hours, Green heard people nearby. He instructed Doe not to make any sound, telling her, "[D]on't say anything, don't move or you won't walk away from here." He then dragged Doe across the street to an area behind a mechanic's shop, where after additional attempts, he penetrated her anus and ejaculated.[5]

Doe testified that Green then asked her if she needed a ride anywhere. When she declined, he drove off in his SUV, and she walked to a friend's house. Her friend initially did not recognize her, as her normally light hair was wet with blood. Doe was also missing her shoes. Another friend went outside and hailed Todd Mallow, a patrol officer for the City of Killeen. Officer Mallow testified that he found Doe curled into a fetal position on the floor and covered by a jacket.[6] Mallow, who had encountered Doe before, testified that she was so badly beaten that he also did not

---

[4] Doe testified that she had seen a pair of panties in Green's SUV, which might have been the "elastic" he put around her neck.

[5] Doe could not remember if Green successfully penetrated her genitals.

[6] Doe testified that she was covered by a blanket that her friend had given her.

3

recognize her. After calling an ambulance for Doe, Mallow went to investigate the Zip Cleaners parking lot, where Doe said she had been beaten and raped. He found pools of blood and bloody drag marks in the parking lot. He also recovered bloody tennis shoes.

At the hospital, Doe was examined by Deborah Kleypas, a Sexual Assault Nurse Examiner (SANE). Kleypas testified that, at the time of the examination, Doe's face was actively bleeding and covered with blood. Her eyes were bruised and swollen shut. She had bruises and abrasions all over her body, including bruises on her face and neck consistent with being slammed to the ground, abrasions on her arm consistent with being dragged across pavement, and abrasions on her knees consistent with being forced to kneel on the ground. Kleypas also found sand, small rocks, and leafy debris inside and outside of Doe's genitals and anus, and her anus was bruised and torn. Swabs from Doe's anus and genitals contained evidence of semen and revealed a mixture of DNA consistent with that of the known DNA of Doe and of Green.

In July 2008, after being shown two photo lineups, one of which contained Green's picture, Doe identified a different man as her assailant. However, she identified Green's vehicle, a tan 1998 Chevrolet Blazer, as the vehicle she had been in before she was beaten and raped.

At trial, Green testified that he had engaged in sexual intercourse with Doe, but claimed that it had been with her consent. He denied having assaulted her.

During closing, the prosecutor stated that " I don't believe the evidence shows that" the intercourse was consensual. The defense objected and moved for a mistrial, stating that the argument was improper. The trial court sustained the objection, instructed the jury to disregard the statement, and denied the motion for a mistrial. Later in closing, the defense objected to the

4

prosecution's statement that Doe was not "mistaken" or "confused" with regard to the events on the night in question. The trial court overruled the objection.

At the conclusion of trial, the jury found Green guilty of the offense of aggravated sexual assault, *see* Tex. Penal Code Ann. § 22.021, and the trial court sentenced him to 60 years' imprisonment. During sentencing, the trial court orally ordered Green to pay attorney's fees and court costs, with the written judgment including an order that Green pay court costs and designating those costs as "$512.00 Plus attorney fees $4835.41." In addition, the State asked that restitution be made a condition of the judgment. Green's counsel objected, saying that there had been no evidence as to the amount of restitution. The State called Brigitte Minica, who testified that the Crime Victims' Compensation Fund had contributed to Doe's medical bills in the amount of $4,595.10. Green's counsel renewed his objection, stating that there was insufficient evidence as to the amount of restitution. The trial court overruled the objection and ordered the defendant pay the amount requested. This appeal followed.

## STANDARD OF REVIEW

We review a trial court's denial of a motion for a mistrial for an abuse of discretion. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). We view the evidence in the light most favorable to the trial court's ruling and uphold the ruling if it is within the zone of reasonable disagreement. *Id.* at 112 (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)). We do not substitute our judgment for that of the trial court, but rather we decide whether the trial court's decision was arbitrary or unreasonable. *Id.*

5

It is the duty of trial counsel to confine their arguments to the record; reference during closing to facts that are neither in evidence nor inferable from the evidence is therefore improper. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). Error exists when facts not supported by the record are interjected in the argument, but such error is not reversible unless, in light of the record, the argument is extreme or manifestly improper. *Id*.

The Texas Court of Criminal Appeals recently held that the trial court's determination of the defendant's ability to pay attorney's fees is a question of sufficiency of the evidence. *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010). In evaluating the legal sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Id.* at 557; *see Williams v. State*, 301 S.W.3d 675, 683-84 (Tex. Crim. App. 2009) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Evidence that is legally sufficient, however, can be deemed factually insufficient in two ways: (1) the evidence supporting the conviction is "too weak" to support the factfinder's verdict, or (2) considering conflicting evidence, the factfinder's verdict is "against the great weight and preponderance of the evidence." *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009).

**DISCUSSION**

*Mistrial*

In his first issue, Green argues that the trial court erred in denying his motion for a mistrial following improper statements made by the prosecutor during closing argument. Specifically, Green contends that the prosecutor gave her personal opinion when discussing whether

6

the sexual acts between Green and Doe were consensual.  The motion for a mistrial was based on the following exchange:

THE STATE: And every witness, even the defendant, is consistent in saying that his penis penetrated both her anus and her female sexual organ.  Now he wants to tell you it's consensual.  I don't believe the evidence shows that—

DEFENSE: Objection, personal opinion.

THE COURT: Sustained.

THE STATE: But every witness agrees.

DEFENSE: Ask the jury to be instructed.

THE COURT: The jury's instructed to disregard any statement by the prosecutor regarding her opinion.  You are the finders of fact.

THE STATE: I'm—

DEFENSE: Move for—

THE STATE: —confident—

DEFENSE: Move for mistrial.

THE COURT: Denied.

DEFENSE: Thank you.

THE STATE: I'm confident you will see that the evidence does not support his position.

Under Texas law, it is improper conduct for a prosecutor to inject personal opinions in statements to the jury.  *See Johnson v. State*, 698 S.W.2d 154, 167 (Tex. Crim. App. 1984).  A mistrial is the trial court's remedy for improper conduct that is so prejudicial that expenditure of

7

further time and expense would be wasteful and prejudicial. *Capps v. State*, 244 S.W.3d 520, 527 (Tex. App.—Fort Worth 2007, pet. ref'd). It is required only in extreme circumstances where the prejudice is incurable. *Id.*; *see Penrice v. State*, 716 S.W.2d 107, 109 (Tex. App.—Houston [14th Dist.] 1986, no pet.) ("To constitute reversible error, it must be extreme or manifestly improper, or inject new and harmful facts into evidence."). Almost any improper argument may be cured by an instruction to disregard. *Dinkins v. State*, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995). Whether a mistrial should have been granted involves most of the considerations of a harm analysis, which requires a look at the severity of the conduct, the measures adopted to cure the harm, and a consideration of the certainty of conviction absent the conduct. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

Here, Green argues that the trial court found the statements to be improper, as evidenced by both the court's order that the jury disregard the statement and the unsolicited instruction to the jury members that they were the finders of fact. Green further argues the statements were so egregious that instructions to disregard were not enough to cure the error and a mistrial would have been the only way to completely cure the error. *See Pernice*, 716 S.W.2d at 109.

The State contends that, even if the statements had been improper,[7] any error was cured by the trial court's instruction to disregard. We agree. The statement itself—"I don't believe

---

[7] While the State also argues that the statements did not constitute improper opinions, we need not reach the issue of whether the trial court erred in excluding the statements. We note, however, that a prosecutor "may argue h[er] opinions concerning issues in the case so long as the opinions are based on the evidence in the record" and do not "constitut[e] unsworn testimony." *See Felder v. State*, 848 S.W.2d 85, 95 (Tex. Crim. App. 1992). Here, the prosecutor's statement that she did not "believe the evidence shows that" appears to refer to the evidence admitted before the jury, and accordingly does not implicate any beliefs or opinions that fall outside of the record.

the evidence shows that"—was not "extreme" in nature, and was immediately objected to. Further, the curative measures taken by the trial court, including sustaining the objection, instructing the jury to disregard the statement, and reminding the jurors that "[y]ou are the finders of fact," sufficiently ameliorated any potential harm. *See Capps*, 244 S.W.3d at 527 (holding that statement, "I wouldn't think there's any doubt at all," was cured by instruction to disregard); *Barnes v. State*, 165 S.W.3d 75, 86 (Tex. App.—Austin 2005, no pet.) (holding that prosecutor's statement, "I know he did this," was cured by instruction). Finally, after looking at the record, which included the victim's testimony and corroborating physical and DNA evidence, it is likely that the same verdict would have been assessed regardless of the comment. Accordingly, as the denial of the motion for a mistrial was not arbitrary or unreasonable and consequently falls within the zone of reasonable disagreement, we hold that the trial court did not abuse its discretion. Green's first issue is overruled.

*Bolstering*

In his second issue, Green argues that the trial court erred by overruling Green's objection to the State's alleged bolstering or vouching for the credibility of a witness in closing argument. In the State's closing argument, the prosecutor stated the following with respect to the victim's testimony:

> THE STATE: And you heard her testimony. Did she sound mistaken to you? Did she sound confused? Were there lapses in time she couldn't account for? Did she suffer any memory loss?
>
> If she had any inconsistent statements in this courtroom with what the nurse said or the statements she gave to the police, Mr. Parker would have asked her about that. But her story was consistent and true.

9

DEFENSE: Objection, personal objection—personal opinion.

THE COURT: I'll overrule the objection.

THE STATE: Her story was sound—

DEFENSE: Objection, personal opinion.

THE COURT: Overruled.

THE STATE: She knew the man in the car, the man at the bank. The man who raped her and beat her are all the same. She knows how many persons she had sex with that night. She's not mistaken or confused.

DEFENSE: Objection, personal opinion.

THE COURT: I'll overrule.

. . . .

THE STATE: But Ladies and Gentlemen, we don't treat animals like this. She didn't deserve this. She didn't deserve this. My God, look at her. She's not mistaken. She's not confused. She can tell you tiny details about what happened.

The defendant was the man in the SUV she picked out. The defendant was the man at the bank. The defendant was the same one who was impotent. The defendant is the one who beat her and slammed her face to the concrete. Who did that to her.

DEFENSE: Objection. Personal opinion.

THE COURT: Overruled.

THE STATE: Look at her cleaned up. My God.

THE COURT: Two minutes, Mrs. Strimple.

THE STATE: She's not confused or mistaken.

DEFENSE: Objection, vouching.

THE COURT: Overruled.

Green argues that the prosecutor made an improper argument when she asserted that the complaining witness "was not confused or mistaken." It is improper to bolster the credibility of witnesses by unsworn testimony. *Menefee v. State*, 614 S.W.2d 167, 168 (Tex. Crim. App. 1981). Such unsworn testimony falls outside the four permissible areas of jury argument, which are: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to opposing arguments; and (4) a plea for law enforcement. *Brown*, 270 S.W.3d at 570. "[A]rguments that go beyond these areas too often place before the jury unsworn, and most times believable, testimony of the attorney." *Id.* (quoting *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973)).

While Green argues that the State's argument was an attempt to bolster the credibility of Doe, the complaining witness, we disagree. Rather, these statements were a response to Green's argument that Doe was confused and constituted a reasonable deduction from the evidence. A statement made during the argument to the jury must be analyzed in light of the entire argument, and not on isolated sentences. *Drew v. State*, 743 S.W.2d 207, 220-21 (Tex. Crim. App. 1987). During his argument to the jury, Green maintained that Doe was confused and mistaken due to the head injuries she had sustained. Green stated, "Obviously she's confused, if you believe my client committed this, because my client drives a tan truck," whereas Doe had testified that Green's vehicle was a "silvery" color. He continued, "There is nothing my client can do except tell you that she's mistaken. She's made a mistake and you've got the wrong person." The prosecutor responded to this argument by telling the jury that the witness was not "confused or mistaken" as a result of her

11

injuries. In looking at the entire argument, we note that the State pointed to the evidence that the complaining witness remembered smaller details, and so it is a reasonable deduction from the evidence that Doe was not "confused or mistaken" as a general matter. Accordingly, as the State's argument constitutes a deduction and is therefore permissible jury argument, Green's second issue is overruled.

*Court Costs, Attorney's Fees, and Restitution*

In Green's third issue on appeal, he contends that the trial court erred in ordering Green to pay court costs, attorney's fees, and restitution, and asks this Court to delete the orders to pay the amounts listed in the final judgment. Citing the recent decision by the court of criminal appeals in *Mayer*, 309 S.W.3d at 557, Green argues that the order requiring him to pay attorney's fees should not stand since there was insufficient evidence showing that Green was able to pay them. He makes the same argument with regard to the order to pay court costs and restitution.

While Green groups attorney's fees, court costs, and restitution together in his argument, these areas are covered by different codes and provisions. We begin with attorney's fees. Article 26 of the Texas Code of Criminal Procedure, which is the controlling law on ordering attorney's fees in criminal cases, provides that, "[i]f the trial court determines that a defendant has the financial resources that enable him to offset in whole or in part the costs of the legal services provided, the court shall order him to pay the amount that it finds the defendant is able to pay." Tex. Code Crim. Proc. Ann. art. 26.05(g) (West Supp. 2009); *Mayer*, 309 S.W.3d at 557. For the purposes of awarding attorney's fees, once an accused is found to be indigent, he is presumed to remain so through the proceedings absent proof of a material change in his circumstances. Tex.

12

Code Crim. Proc. Ann. art. 26.04(p) (West Supp. 2009); *Mayer*, 309 S.W.3d at 557. Accordingly if the defendant is found to be indigent at the outset of trial, there must be some evidence presented to the trial court of a change in financial circumstances before attorney's fees can be assessed against the defendant. *See Mayer*, 309 S.W.3d at 553.

In this case, Green was found to be indigent prior to trial and was appointed trial counsel. No evidence indicating a change in his financial circumstances was proffered during guilt/innocence or sentencing proceedings. Indeed, during sentencing proceedings, the trial court asked Green whether his financial circumstances had changed with regards to his ability to hire an attorney. Green responded that his financial circumstances had not changed, and the trial court ordered the appointment of appellate counsel and granted Green a free record on appeal on account of his indigence. Accordingly, as the presumption of indigence remains, we hold that the evidence is insufficient to support the trial court's award of attorney's fees. *See* Tex. Code Crim. Proc. Ann. art. 26.04(p); *Mayer*, 309 S.W.3d at 557. We consequently modify the trial court's judgment to delete the order to pay attorney's fees and order Green to pay only the costs of court in the amount of $512. *See Mayer*, 309 S.W.3d at 557 (approving of intermediate appellate court's reformation of judgment instead of remand on issue of defendant's ability to pay attorney's fees).[8]

---

[8] The State does not contend that attorney's fees should be assessed against Green. However, the State argues that, while the trial court orally ordered Green to pay attorney's fees, such an order was not reflected in the written judgment, and therefore the order does not require Green to pay attorney's fees. We disagree. The written judgment states, "The Court ORDERS Defendant to pay all . . . court costs . . . as indicated above." Under the heading "Court Costs," the written judgment specifies, "$512.00 Plus attorney fees $4835.41." This language suggests that the court's written judgment orders attorney's fees to be paid as part of the costs of court. This reading is supported not only by the court's oral judgment, in which Green was ordered to pay attorney's fees, but also by treatment of attorney's fees in the code of criminal procedure, under which "attorney's

13

We turn next to court costs and restitution. Green urges us to extend the reasoning of *Mayer*, arguing that Green's indigence also bars the imposition of court costs and restitution against him. However, the statutes governing courts costs and restitution differ substantially from the statute authorizing the award of attorney's fees. Awards of attorney's fees are conditioned on the defendant's ability to pay, as the trial court may order the defendant to pay attorney's fees only "*[i]f* the trial court determines that a defendant has the financial resources" to contribute to the costs of representation. Tex. Code Crim. Proc. Ann. art. 26.05(g) (emphasis added). The court of criminal appeals relied on this statutory language when concluding in *Mayer* that "the defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement" of attorney's fees for court-appointed legal counsel. 309 S.W.3d at 556.

However, the statutes governing court costs and restitution contain no similar language conditioning their imposition on the defendant's ability to pay. Regarding court costs, the government code simply states that a "person convicted of an offense *shall pay* the following" court costs; no reference is made to the defendant's ability to pay the specified costs. *See* Tex. Gov't Code Ann. § 102.021 (West Supp. 2009) (court costs on conviction). Similarly, the defendant's inability

---

fees are assessed as court costs against convicted defendants." *Weir v. State*, 252 S.W.3d 85, 88 n.2 (Tex. App.—Austin 2008), *rev'd on other grounds*, 278 S.W.3d 364 (Tex. Crim. App. 2009); *see* Tex. Code Crim. Proc. Ann. art. 26.05(g) (West Supp. 2009) (court may order defendant to pay some or all of "the costs of the legal services provided . . . *as court costs*") (emphasis added). While the State indicates that the "custom" in Bell County is to list an award of attorney's fees as a "special order" in the judgment, the State provides no evidence of such a custom, nor is any such practice listed in the Bell County local rules.

to pay restitution is no bar to its imposition under statute.[9] Article 42.037(c) of the Texas Code of Criminal Procedure requires the court to consider the following factors in determining whether to order restitution: (1) the amount of the loss sustained by any victim and the amount paid to or on behalf of the victim as a result of the offense; and (2) any other factors the court deems appropriate. Tex. Code Crim. Proc. Ann. art. 42.037(c) (West Supp. 2009). The statute does not mandate that the amount of restitution be based on the defendant's ability to pay. In fact, the code of criminal procedure was amended in 2005 to omit provisions that required the trial court to consider the "financial resources of the defendant" and the "financial needs and earning ability of the defendant and the defendant's dependents" in determining whether to order restitution. *See* Act of May 27, 1993, 73rd Leg., R.S., ch. 806, § 1, 1993 Tex. Gen. Laws 3207, *amended by* Act of May 25, 2005, 79th Leg., R.S., ch. 969, § 1, 2005 Tex. Gen. Laws 3244, 3245 (current version at Tex. Code Crim. Proc. Ann. art. 42.037). Accordingly, we conclude that the reasoning of *Mayer*, which deals with a statute that specifically conditions the award of attorney's fees on the defendant's ability to pay, does not apply to orders to pay court costs and restitution.

Green also argues that costs and restitution should not be assessed against him because he will, in all likelihood, be unable to pay the costs and restitution when he is released from prison. Such an argument, however, is not ripe. In similar contexts, the defendant's ability to pay fines cannot be used to challenge the imposition of the fines until the defendant has been imprisoned solely for failure to pay. *See Tate v. Short*, 401 U.S. 395, 398 (1971) (holding that incarcerated

---

[9] While the defense objected during sentencing that the testimony of Minica regarding the amount spent on Doe's medical bills was insufficient to support the trial court's award of restitution, no such argument is made on appeal.

15

defendant could not assert equal protection challenge to fine when there was no evidence that incarceration was due to failure to pay fine); *Wright v. State*, 930 S.W.2d 131, 134 (Tex. App.—Dallas 1996, no pet.) (holding that indigent defendant could not assert equal protection violation for imposition of fine he could not pay until he was imprisoned for failure to pay); *Pennington v. State*, 902 S.W.2d 752, 754 (Tex. App.—Fort Worth 1995, pet. ref'd) (citing *Rumph v. State*, 687 S.W.2d 489, 495 (Tex. App.—Houston [14th Dist.] 1985, no pet.) (holding that appellant's complaint concerning inability to pay restitution that was condition of probation is not ripe until probation is revoked solely because of inability to pay)).

Accordingly, Green's argument that his inability to pay courts costs and restitution bars the trial court from assessing them against him fails, and we reform the judgment with regard to attorney's fees only.

## CONCLUSION

We modify the judgment to delete the order that Green pay $4,835.41 in attorney's fees and affirm the judgment as modified.

_____

Diane M. Henson, Justice

Before Chief Justices Jones, Justices Patterson and Henson

Modified and, as Modified, Affirmed

Filed:   October 8, 2010

Do Not Publish

16